Churbuck *v.* Union Railroad Company, Appellant.

182

Argued September 28, 1954. Before STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Chauncey E. Pruger,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Robert B. Ivory,* with him *Evans, Ivory & Evans,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 3, 1955:

Plaintiff, George R. Churbuck, brought this action in trespass against Union Railroad Company to recover damages for personal injuries sustained when a pick wielded by an employe of the defendant hit a steel rail and chipped off a sliver of steel which struck plaintiff's eye. Following a jury verdict in favor of plaintiff in the amount of $15,000, defendant filed motions for judgment non obstante veredicto and for a

new trial which were refused by the court en banc. Defendant appeals from the judgment entered on the verdict, assigning as error the refusal of its motions.

Appellant first contends that judgment n.o.v. should have been entered because there was insufficient proof of negligence for submission to the jury. Considering the evidence in the light most favorable to the plaintiff, it appears that following a heavy snow storm in November of 1950, appellant railroad company contracted with the Universal Maintenance & Painting Company to remove the snow from its railroad yard. Plaintiff, with eight or ten other employes of the Universal Company, was working under the direction of appellant's foreman, Theodore V. Kelley. At about 10 or 10:30 P.M. on November 30, 1950, plaintiff was engaged in removing by the use of a pick, hard packed snow and ice between a running rail and a guard rail at a switch point on one of the tracks in the yard. The guard rail, which is a customary device against derailment, was located parallel to and about three inches from the running rail throughout most of its length, the space widening to about five inches at its ends. One Dudash, also an employe of the Universal Company, was similarly removing the ice with a pick between the guard rail and the running rail on the opposite side of the same track. The plaintiff stated that he was chipping the ice out by working in a stooped-over position and swinging the pick very gently. Dudash testified he was performing the work in a similar manner. Neither plaintiff nor Dudash had ever engaged in this kind of work, their regular occupations being of an entirely different nature.

After the two men had been working about five or ten minutes, Kelley, the appellant's foreman, approached and, after watching the operation, took the plaintiff's pick and handed him a flashlight he was car-

rying, saying, according to Dudash, ". . . I will show you how you should have handled the pick.". Plaintiff, at Kelley's direction, was standing about five feet to the rear and left of Kelley and was playing the flashlight on the spot where Kelley was about to hit. Kelley swung the pick handle back over his shoulder so that it was horizontal with the ground and made a full hard swing with the result that instead of hitting the ice, he hit one of the rails and a chip of the rail flew and struck plaintiff in the right eye. Both plaintiff and Dudash said that the accident happened on this first swing of the pick by Kelley. Under the testimony the jury could find that Kelley's target area was at a point where the two rails were about three inches apart.

The plaintiff called John Douglas as an expert on the proper and safe way to use a pick in a restricted area such as here involved. Douglas had been in the contracting and construction business for 45 or 50 years. He had had many years' experience in using picks himself and in supervising their use by others, including many removals and relocation of railroad tracks where picks were used in the vicinity of rails; this experience embraced the removal of ice near metal objects. When asked his opinion as to the manner in which appellant's foreman Kelley used the pick under the circumstances, he stated in effect that there was likelihood that a chip of the rail would fly off; that this was foreseeable and that the full swing taken by Kelley was "very hazardous and improper". The likelihood and foreseeability of what happened was confirmed by E. C. Stevenson, the assistant supervisor of track and maintenance of the railroad company, who was called as an expert by appellant. Stevenson's job was the supervision of all foremen, including Kelley. On cross-examination he testified that ". . . sometimes a piece flies and sometimes not when a rail is struck by a

pick", and that this was a fact known not only to him but to men working under him as foremen. Kelley, who had worked 16 years for the railroad company, 12 of them as a track laborer, during all of which time he used picks, when called on defense admitted that with a full swing of the pick and a hard blow he would miss the target of ice and hit the rail three or four times out of ten. We think the testimony justified the conclusion by the jury that appellant's employe Kelley knew or should have known the proper way to use a pick in the situation presented; that he wielded the pick in an improper and unsafe manner and that injury to plaintiff was a consequence reasonably foreseeable by him. To establish liability it was not necessary that the exact manner in which the injury occurred be foreseen. "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.": Restatement, Torts, §435 (1).

Appellant principally relies upon the case of *White v. Roydhouse*, 211 Pa. 13, 60 A. 316. There the defendant's employe Ruley was in the act of mixing mortar in a mortar bed at the same time the plaintiff came over to a water barrel about 15 feet distant from the mortar bed. At that moment Ruley struck a solid piece of unslacked lime with his hoe for the purpose of crushing it, and as he did so a piece of lime flew the 15 feet and struck the plaintiff in the eye, causing serious injury thereto. We deem the case clearly distinguishable. In the first place the instrumentalities involved were comparatively innocuous—lime and a hoe, compared with steel and a pick. Secondly, the plaintiff failed to establish an improper blow or the use of more force than was necessary. There was testimony in the present

case that plaintiff and his coworker were satisfactorily removing the ice with their short chipping blows. In its opinion in the *White* case, this Court said at p. 16: ". . . The result was not a probable consequence of Ruley's act in mixing the mortar with the hoe; the most that could be said of it is, that the consequence was very remotely possible, so remotely, that it is one which in the ordinary affairs of life the most careful men do not anticipate and make provision against. . .". There was no evidence in the *White* case that the blow was negligently struck nor, as here, that injury to another was reasonably foreseeable.

Appellant contends that if not entitled to judgment n.o.v., a new trial should be awarded because (1) expert testimony as to the proper use of a simple tool such as a pick was inadmissible, and (2) if admissible, plaintiff's witness Douglas did not qualify as an expert. We have above recited this witness' extended experience in the use of a pick and we think that the court properly ruled that he was qualified. Expertness may be acquired through occupational experience as well as by scientific study. A closer question is whether opinion or expert testimony was here required and therefore admissible. Appellant points to the case of *Burton v. Horn & Hardart Baking Co.*, 371 Pa. 60, 88 A. 2d 873, wherein we said ". . . Expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject: . . .", and affirmed the trial judge's rejection of expert testimony offered to prove that the steps on which the plaintiff fell were improperly constructed and were slippery and dangerous when wet. We held that the defendant was not required to use the best construction or material but only had the duty to supply a reasonably safe stairway and that whether a

dangerous condition existed could be evaluated by the jury without the assistance of opinion testimony. We merely adhered to the general principle that a trial judge may properly exclude opinion evidence where the circumstances can be described to the jury and their bearing on the issue estimated by persons without special knowledge or training. We think the *Burton* case is clearly distinguishable from the present case. The average person of ordinary intelligence knows the function of a pick but it may not be assumed that such knowledge extends to its varying use under all circumstances. Nor may it be assumed that any of the men and women jurors in the present case, much less all of them, knew the likelihood of a chip flying if a pick was brought down hard on a steel rail, and this was a matter that bore directly on the question of foreseeability by Kelley in determining the issue of negligence. In addition to the *Burton* case, appellant cites other decisions in support of its contention but in our opinion they are all similarly distinguishable in that the excluded expert testimony was directed toward matters within the common knowledge and experience of the ordinary person and as to which a jury could exercise its own judgment without the aid of the opinion of others. Apart from any significance that might be given to the fact that appellant also resorted to and introduced expert testimony on the proper use of a pick under the circumstances, we are persuaded that the trial court did not err in admitting the challenged testimony.

Appellant also claims that the plaintiff and his co-worker witness Dudash were improperly permitted to express an opinion as to whether Kelley's swing of the pick was improper and unsafe. They were unquestionably not qualified to express an opinion, but a careful reading of their testimony discloses that Dudash ex-

pressed no such opinion, and that plaintiff's testimony complained of was elicited on redirect examination after appellant's counsel had opened the door to the expression of opinion by his cross-examination.

Appellant claims that the verdict of $15,000 was excessive. We agree with the lower court's conclusion to the contrary. The plaintiff was 28 years of age and prior to the accident enjoyed good health and normal vision. His hospital and doctor's bills amounted to about $500 and his actual wage loss to between $1,000 and $1,100. This left $13,500 to cover pain, suffering and inconvenience, past and future, and loss of earning power. The undisputed evidence was that plaintiff lost about 80% of the visual efficiency of the right eye and that the condition was permanent. Prior to working temporarily for the Universal Company plaintiff was employed by the Kelsey-Hays Wheel Company as a machine operator at a wage of $2.15 per hour, and he returned to this employment after he had sufficiently recovered from the accident, at a wage increase of $.11 per hour. However, plaintiff showed that he was an Army-trained pilot; that he wanted to become a commercial pilot, but up to the time of the accident had been barred from that work by existing requirements, and that such requirements had been relaxed so that, except for the effects of his injury, he was eligible. Commercial pilot work paid a beginning salary of $300 per month with assured raises to something over $800 per month. Under the circumstances an award of $13,-500 for pain, suffering, inconvenience and loss of earning power through the permanent injury sustained should not be considered excessive.

Judgment affirmed.