## Dollison *v.* Baltimore and Ohio Railroad Company, Appellant.

Argued November 30, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John A. Shrader,* for appellant.

*James E. Beasley,* with him *Jeffrey M. Stopford,* and *Beasley, Albert, Hewson & Casey,* for appellee.

OPINION BY MR. JUSTICE POMEROY, December 20, 1971:

This appeal challenges the correctness of the trial court's refusal of appellant's motion for a new trial

following a jury verdict in appellee's favor as a result of injuries sustained by appellee in a grade crossing accident.[1] Most of the reasons assigned for a new trial concern alleged errors in the court's charge; one involves the admission of certain evidence; the others have to do with the weight of the evidence showing disability and the alleged excessiveness of the verdict.

We have reviewed the voluminous record[2] and scrutinized carefully the charge and the rulings of the trial judge. We have concluded that the motion for a new trial was properly refused, and affirm the judgment below.

In order to have an understanding of the issues raised, the facts must be recounted in some detail. Appellee was an employee of the City of Philadelphia and a passenger on a city-owned sanitation truck driven by another employee. On a dark night in February, the truck collided with a train of the appellant, The Baltimore and Ohio Railroad Co. The accident took place in South Philadelphia at a place where an unpaved public street crosses the yard running tracks of the B. & O. Railroad at grade. The truck was enroute from a city dump; the train consisted of 32 freight cars being moved from the pier district to the appellant's east side yards. In the trash truck were appellee, the driver, and another passenger. In the locomotive cab were the engineer, fireman, a conductor, and two flagmen. The truck was proceeding westwardly at a "creeping" speed of 1 to 2 miles per hour; the train was headed south at a speed estimated between 7 and 15 miles per hour. The engineer, seated on the right or westerly side of the

---

[1] Suit was against the Baltimore and Ohio Railroad Company, which joined the City of Philadelphia as an additional defendant. The verdict was against both defendants. Only the Railroad has appealed.

[2] The trial consumed nine days; the record consists of 1658 pages, of which 76 pages are the court's charge.

locomotive cab, had no view of the truck approaching from the east; the fireman, seated on the left, stated that he did see the approaching lights of the truck when that vehicle was about 80 feet from the crossing, and the locomotive five car lengths from that intersection. When the lights continued to move closer, the fireman ordered the engineer to stop, and the emergency brakes were applied immediately, but too late to avoid a collision. The locomotive hit the right side of the truck.

The testimony was sharply conflicting on the highly important question of visibility and warnings. Appellee's witnesses, the other members of the sanitation crew, stated that the train was operating without lights and without any warning bell or horn; that it was snowing and misty at the time, with some smoke from the dump also obscuring vision; that they were unable to see the train until practically the moment of impact. The train crew testified to the contrary.

We turn to the asserted errors relative to the court's charge:

(1) Appellant asserts three errors relative to liability: refusal to charge that railroad liability could not be found "merely from the failure to anticipate an unusual or negligent use of a crossing by another"; refusal to charge that the presence of a train on a crossing constitutes adequate warning to approaching vehicles; and that the charge on observable danger was improper and inapposite on these facts. The point last mentioned was not objected to at the conclusion of the charge and will not be considered for the first time on appeal. See, e.g., *Glass v. Freeman*, 430 Pa. 21, 240 A. 2d 825 (1968).

As we have often stated, asserted errors relative to instructions to the jury cannot be considered in isolation, but must be viewed in light of the evidence and the other portions of the charge dealing with cognate matters. See, e.g., *Mount v. Bulifant*, 438 Pa. 265, 270,

265 A. 2d 627 (1970); *Steinberg v. Sheridan,* 416 Pa. 261, 264, 205 A. 2d 870 (1965); *Harman v. Chambers,* 358 Pa. 516, 519, 57 A. 2d 842 (1948). So viewed, we find no error in the refusal of the defendant's two points. The trial court covered the area of liability with care and thoroughness. It properly defined negligence as the absence of due care under the circumstances, and mentioned the circumstances that were here relevant. In so doing it made particular reference to whether or not the truck and the train were visible to their respective crews, and whether or not the train's bell and horn had been sounded. The court said, correctly, "that a railroad has a superior right of travel over a motor vehicle at a grade crossing, provided that and assuming that adequate warnings have been given. There is no law that requires a railroad train to be operated at such speed that it can stop if a motor vehicle appears suddenly in front of it at a grade crossing." See, *inter alia, Haller v. Penna. R. R. Co.,* 306 Pa. 98, 107, 108, 159 Atl. 10 (1931). The judge also stated that the railroad had no duty to flag the crossing in the absence of "exceptional danger". On the other hand, the judge stated that the appellee "was entitled to reasonable warning by the Railroad of the approach of its train"; also that if the fireman saw the truck coming *"under such circumstances as to indicate that the driver of the truck might be negligent"* and would not stop, "it was his duty to give warning to the engineer in sufficient time to avoid the accident. You just can't sit blithely by and say 'I expected him to stop.'"

While the court did not charge in so many words, as appellant requested, that failure of the appellant's fireman to anticipate negligence of the truck operator would not bring liability, neither did it predicate liability on such failure. Rather it stressed that the fireman had a duty to warn the engineer if "under the cir-

cumstances" it appeared the truck driver was not going to stop. Those circumstances, under appellee's evidence, included the bad weather, poor visibility, and lack of any warnings by the train as it approached the crossing. We find no error in this instruction.

As to the presence of the train on the crossing as itself constituting adequate warning of its presence, see *Commercial Investment Trust, Inc. v. Reading Company,* 147 Pa. Superior Ct. 129, 23 A. 2d 83 (1941); a charge such as requested was not proper in this case, where the evidence did not show that the truck struck a train which already occupied the crossing, thus rendering irrelevant the sounding of a warning signal. Cf. *Yolton v. Penna. R. R. Co.,* 368 Pa. 429, 84 A. 2d 501 (1951); *Wink v. Western Maryland Rwy. Co.,* 116 Pa. Superior Ct. 374, 378-79, 176 Atl. 760 (1935) and cases there cited.

(2) Appellant next asserts that the court's charge on the element of causation was inadequate and misleading. We disagree. The court stated more than once that appellant's negligence must be found to be the proximate cause of the accident before liability could be imposed upon it. Specifically, it charged that "the injuries must be the natural and probable consequence of the negligence, such a consequence under the circumstances that might and ought to be foreseen by the wrongdoer as likely to flow from his act." While the definition of legal cause might have been more elaborate, what was given was neither inadequate nor misleading. *Restatement 2d, Torts,* §§430, 431, 432; see generally, *Whitner v. Lojeski,* 437 Pa. 448, 456-458, 263 A. 2d 889 (1970).

(3) Appellant assigns as error the introduction into evidence of appellant's operating rule number 94. Rule 94 reads in pertinent part: "On yard track, movements must be made at such speed that stop can be made to

prevent accidents. At points where tracks converge, caution must be used to prevent accidents when entering or leaving tracks. Engine and train crews must be on the alert to prevent accidents. Firemen must assist engineer in maintaining lookout both ahead and behind the engine, and promptly calling attention to any condition which might cause an accident."

The admission into evidence of a railroad's private operating rule may be prejudicial when that rule establishes a standard of care greater than, or more inflexible than, the law requires. *Anstine v. Pennsylvania R.R. Co.*, 342 Pa. 423, 20 A. 2d 774 (1941). There is no error, however, when such a rule does no more than promulgate a standard that is no greater than that imposed by law. As we read Rule 94, it merely requires that the fireman and engineer must be on the alert to avoid accidents. Certainly the law holds the operators of a locomotive to at least that standard of care. Thus, even if we were to accept appellant's argument that Rule 94 was not intended to cover and is irrelevant to a grade crossing accident between train and motor vehicle, there was no reversible error.

(4) On the damages aspect of the case, appellant again takes issue with the charge to the jury. It asserts that the charge so misstated or misinterpreted the testimony of an expert medical witness called by appellee as to deprive appellant of a material defense on the issue of damages. We find no merit in this contention, for even if it could be said that the trial judge was not wholly accurate in referring to the testimony of the witness (a conclusion which we do not accept), the charge as to damages was on the whole eminently fair, and the error was not prejudicial.[3]

---

[3] The trial judge instructed the jury on nine different occasions that it was the sole arbiter of the facts, and that the jury was not bound by the recollection of the court.

Finally, appellant contends that there was not sufficient evidence to prove that the accident caused plaintiff to be totally and permanently disabled. From this it is argued that the verdict was against the weight of the evidence, or, at least, that the verdict ($130,000) was excessive. While there was a considerable conflict in the testimony of the expert witnesses of the parties concerning the permanent nature of appellee's disability (diagnosed as a paranoid psychosis), plaintiff's evidence on the point qualified as opinion evidence and was much more than mere conjecture or speculation as to what might occur in the future. See *Messer v. Beighley*, 409 Pa. 551, 187 A. 2d 168 (1963). We find no error. Moreover, the evidence supports the verdict, and we cannot say the trial court abused its discretion in refusing to set the verdict aside either on the ground of insufficiency of evidence, *Herron v. Silbaugh*, 436 Pa. 339, 346, 260 A. 2d 755 (1970), or of excessiveness. *Weed v. Kerr*, 416 Pa. 233, 235, 205 A. 2d 858 (1965); compare *Quinn v. Kumar*, 437 Pa. 268, 263 A. 2d 458 (1970).[4]

Judgment affirmed.

Mr. Justice COHEN took no part in the decision of this case.

---

[4] Plaintiff's special damages were $43,385 in past wage loss and medical bills. Future drug expenses were estimated at over $4,000. His future wage loss, based on work life expectancy reduced to present worth, was $65,889.