379 A.2d 111

**Mamie M. FORD, Appellant,**

v.

**James JEFFRIES, Sr., Appellee.**

Supreme Court of Pennsylvania.

Argued March 11, 1975.

Decided Oct. 28, 1977.

590

Andrew J. Banyas, III, Pittsburgh, for appellant.

James E. Coyne, Lancaster, Mentzer, Coyne & Duffy, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

This is an appeal from an order of the Superior Court affirming the trial court's denial of a motion to remove a compulsory non-suit in a negligence case brought by appellant, Mamie M. Ford, against appellee, James Jeffries, Sr. *Ford v. Jeffries,* 229 Pa.Super. 716, 322 A.2d 671 (1974). We granted appellant's petition for allowance of appeal and this appeal followed. Appellant contends that the trial court improperly granted appellee's motion for a compulsory non-suit after appellant had rested her case. We agree, and therefore vacate the order of the Superior Court affirming the Court of Common Pleas and, reverse the order of the Court of Common Pleas denying the motion to remove the compulsory non-suit.

An order granting a non-suit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause

of action have been established. *Watkins v. Sharon Aerie No. 327 F.O.E.,* 423 Pa. 396, 223 A.2d 742 (1966). We must therefore review the evidence to determine whether the appellant was entitled to have the jury consider whether appellee engaged in negligent conduct toward the appellant and, if so, whether appellee's conduct was the proximate cause of the harm suffered by the appellant.

Appellant's evidence, and the reasonable inferences arising therefrom, indicate the following. Appellee owned a dwelling house which he purchased as an investment for rental to tenants. This house was located about five or six feet from the appellant's home, on the adjoining lot. The last tenant to occupy appellee's rental property vacated the premises in the fall of 1968. The property was in a state of disrepair: windows were broken; beneath one window was a large hole; another hole, located in the foundation wall, had been stuffed with rags; several other holes existed in the outside walls; lattice work between a frame porch and the ground had been torn down; the property harbored large rats; dogs wandered in and out of the basement; and unpleasant odors emanated from the property.

Appellant complained to appellee about the condition of the property, but nothing was done. Appellant then reported the condition of the property to the City of Pittsburgh, and a representative of the city visited the property. Appellee learned about the appellant's complaint to the City of Pittsburgh and complained to her that she should not have reported him. Appellee promised that he would "fix up everything." Some minimal repairs were made, but appellee's house continued in a state of disrepair. The holes in the outside walls and foundation of the house remained.

On July 30, 1969, at 2:27 a.m., after the house had been vacant and in a state of disrepair for some months, a fire started in appellee's house, damaging parts of the first and second floors. Appellee made no repairs to the house after this fire, except that crossboards, forming an "X", were placed over broken windows. On September 25, 1969, appellant renewed her complaint to appellee about the condition

of the property, telling appellee that she wished something would be done about the property because it was a continuing fire hazard. Appellee indicated he did not know what would be done.

On September 26, 1969, at approximately 2:00 a.m., a second fire broke out in appellee's house. This fire started on the second floor. Flames coming out of the windows of the appellee's house ignited the eaves of the appellant's home, resulting in almost total destruction of the appellant's home.

Our review of the evidence leaves no doubt that the jury could reasonably have concluded that the appellee engaged in negligent conduct toward the appellant.

" 'A possessor of land is subject to liability to others outside of the land for physical harm caused by the disrepair of a structure . . . if the exercise of reasonable care . . . would have made it reasonably safe by repair or otherwise.' " Section 365 of the Restatement of Torts, Second. *See McCarthy v. Ference,* 358 Pa. 485, 58 A.2d 49 (1948).

Except for placing crossboards on the broken windows after the first fire, from the fall of 1968 until the time of the second fire in September of 1969, appellee took no steps to prevent persons from entering the property.

■■ A property owner can reasonably be expected to know that the visible conditions of vacant property in a state of disrepair may attract, for various purposes, children or adults, who, having entered the property, might act, either negligently or intentionally, in a manner that would cause a fire. *See, Fireman's Fund Insurance Co. v. Aalco Wrecking Co. Inc.,* 466 F.2d 179 (8th Cir. 1972). Such properties "invite" strangers for various purposes and are more likely to be targets for arsonists than are properties maintained in good repair. Appellee's conduct in allowing the property to deteriorate, particularly after the first fire, increased the risk that a fire would occur on the premises. We are unwilling to say, as a matter of law, that the

maintenance of a vacant dwelling house in a state of disrepair visible to passersby does not create an unreasonable fire hazard. That hazard in this case was located only five or six feet from appellant's house. A jury question was thus presented as to whether the appellee negligently maintained his property prior to the second fire. The jury should have been permitted to consider the condition of the property, and whether its state of disrepair created an unreasonable risk of harm by fire to appellant's property.

This conclusion is buttressed by the statutory recognition that structures in a "state of disrepair," or in a "dilapidated condition," may constitute a "fire menace" or "hazard" to nearby property, requiring the removal or repair of the structure. *See* Act of April 27, 1927, P.L. 450, No. 291, § 3, as amended, by the Act of February 17, 1972, P.L. 72, No. 24, § 2.

Appellee contends that, as a matter of law, the evidence is insufficient to establish that he was the proximate cause of the harm sustained by the appellant. The terminology of *legal cause* used in the Restatement of Torts, Second, rather than the more traditional terminology of *proximate cause,* has been adopted by this Court. *Whitner v. Von Hintz,* 437 Pa. 448, 263 A.2d 889 (1970); *Dollison v. Baltimore and Ohio Railroad Company,* 446 Pa. 96, 284 A.2d 704 (1971); *Majors v. Brodhead Hotel,* 416 Pa. 265, 271, 205 A.2d 873 (1965). Whether the issue is discussed in terms of *proximate cause* or *legal cause* the underlying considerations and the result are the same. Under the older and more traditional approach the issue was whether the defendant's conduct was a proximate cause or a remote cause. Under the Restatement approach the issue is whether the defendant's conduct was, on the one hand, a "substantial factor" or a "substantial cause" or, on the other hand, whether the defendant's conduct was an "insignificant cause" or a "negligible cause." See Section 431, Restatement of Torts, Second. The determination of the issue simply involves the making of a judgment as to whether the defendant's conduct although a cause in the "but for" sense is so insignificant that no

ordinary mind would think of it as a cause for which a defendant should be held responsible. Section 431, comment a, Restatement of Torts, Second, explains the distinction between substantial cause and cause in fact as follows:

"The word 'substantial' is used to denote the fact that the defendant's conduct has such an affect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called 'philosophic sense,' yet the effect of many of them is so *insignificant* that no ordinary mind would think of them as causes."

The determination of whether the conduct of the defendant was a substantial cause or an insignificant cause of plaintiff's harm should not be taken from the jury if the jury may reasonably differ as to whether the conduct of the defendant was a substantial cause or an insignificant cause. Section 434(1)(a), Restatement of Torts, Second. Such is the case before us. When one negligently maintains property so as to create a fire hazard to an adjoining property and fire harm results, we refuse to conclude, as a matter of law, that the negligent conduct in maintaining the fire hazard was an insignificant cause. This issue is therefore one for the jury to consider.

The question is also raised as to whether the appellee should escape liability as a matter of law simply because the actual physical force that started the fire is unknown in this case. Although some force may have intervened between appellee's conduct and the resulting harm to the appellant, it cannot be said, as a matter of law, that any such intervening force superseded appellee's conduct. Not every intervening force is a superseding force. Section 435(1) of the Restatement of Torts, Second, states:

"If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither

596

foresaw nor should have foreseen the extent of the harm *or the manner* in which it occurred does not prevent him from being liable." (Emphasis added.)

*See Churbuck v. Union Railroad Company,* 380 Pa. 181, 110 A.2d 210 (1955).

Comment b of Section 442B of the Restatement of Torts, Second, explains Section 435(1) stating,

"If the actor's conduct has created or increased the risk that a *particular harm to the plaintiff* will occur, and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about *in a manner which no one in his·position could possibly have been expected to foresee or anticipate.* This is true not only where the result is produced by the direct operation of the actor's conduct upon conditions or circumstances existing at the time, but also where it is brought about through the intervention of other forces *which the actor could not have expected, whether they be forces of nature, or the actions of animals, or those of third persons* which are not intentionally tortious or criminal. This is to say that *any harm which is in itself foreseeable,* as to which the actor has created or increased the recognizable risk, *is always 'proximate,'* no matter how it is brought about, except where there is such intentionally tortious or criminal intervention, and it is not within the scope of the risk created by the original negligent conduct." (Emphasis added.)

If one engages in negligent conduct toward another, such as unreasonably increasing the risk that that person will suffer a particular kind of harm, it cannot be said, as a matter of law, that the actor is not liable simply because the foreseeable plaintiff suffered the foreseeable harm *in a manner* which was not foreseeable. Appellee's conduct in this case could have increased the risk that appellant's house would be damaged by fire. Such harm in fact occurred. Given these circumstances, it was for the jury to determine whether the appellee's conduct, if it was negligent, was superseded by the intervening force.

■ Although there are some circumstances under which one is not liable for the intervening act of third persons committing intentional torts or crimes, that principle does not apply in this case because any such acts were within the scope of the risk created by the appellee. Section 448 of the Restatement of Torts, Second, is applicable to the situation before us:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.*" (Emphasis added.)

*See Anderson v. Bushong Pontiac Company, Inc.,* 404 Pa. 382, 171 A.2d 771 (1961). The condition of appellee's property was such that third persons might avail themselves of the opportunity to commit a tort or a crime. Whether or not appellee should have realized that such a situation had been created is a question for the jury to decide.

■ Appellee relies on *Githens, Rexsamer & Co. v. Wildstein,* 443 Pa. 480, 277 A.2d 157 (1971). *Githens* arose from a different factual situation but did hold that the defendant was not liable as a matter of law. In *Githens* the alleged negligent conduct involved the manner of storing empty boxes within a building. *Githens* does not make clear whether, as a matter of law, the defendant had not engaged in negligent conduct or whether the defendant had engaged in negligent conduct but, as a matter of law, was not the legal cause of the harm caused to adjoining property by fire. To the extent that *Githens* held that one who negligently maintains property in such a condition as to constitute a fire hazard to adjoining properties can not be the legal cause of the resulting harm, we disavow such a principle and overrule *Githens.*

The order of the Superior Court is reversed, and the record is remanded to the Court of Common Pleas for further proceedings consistent with this opinion.

JONES, former C. J., did not participate in the decision of this case.

ROBERTS and POMEROY, JJ., join in this opinion.

NIX, J., filed a concurring opinion in which ROBERTS and POMEROY, JJ., join.

NIX, Justice, concurring.

Initially, it will be noted that I am in full accord with the majority's rejection of the trial court's finding that the evidence in the case did not present a jury question as to whether appellee was negligent in permitting his property to become and remain in a pronounced state of disrepair and to be left vacant, open and abandoned. As the majority correctly notes, under our established law:

> " 'A possessor of land is subject to liability to others outside of the land for physical harm caused by the disrepair of a structure . . . if the exercise of reasonable care . . . would have made it reasonably safe by repair or otherwise.' Section 365 of the Restatement of Torts, Second. *See McCarthy v. Ference,* 358 Pa. 485, 58 A.2d 49 (1948)."

This rule is clearly appropriate in instances where the physical harm resulting from the disrepair of the structure is fire damage. The danger of fire is certainly within the ambit of risks occasioned by the conduct of a property owner who allows his premises to fall in such a state of disrepair that it becomes a fire hazard, and the adjoining property owners are within the class of persons likely to be harmed thereby. If the jury determines from the evidence that the property owner could have abated the hazard and made the premises reasonably safe "by repair or otherwise", the owner's failure to do so may properly be considered a failure to exercise reasonable care, therefore justifying a finding of negligence.

Another basis for the trial court's decision to grant the motion for a compulsory nonsuit, however, was that court's conclusion that appellant had failed to introduce testimony to meet her burden of proving "that [defendant's] negligence was the proximate cause of the plaintiff's loss." It is undisputed that the instant record fails to provide any basis for determining the origin of the fire. It is therefore urged that there can be no basis for a finding that the state of disrepair of appellee's property was in fact a legal cause for the resulting damage to appellant's property. In essence the argument presupposes that in absence of positive evidence that the dilapidated condition substantially contributed to either the start of the fire or its spread, we must hold as a matter of law that appellant has failed to establish that the condition was a legal cause and thus there would be no basis upon which to fasten upon appellee the responsibility for appellant's loss. The majority rather superficially responds to this contention by suggesting that it then becomes a question of fact to be resolved by the jury. In my judgment this question is the heart of the issue presented and requires further amplification.

I believe the case is correctly decided because where it is established that a property has been allowed through the negligence of its owner to become and remain in such a deteriorated and dilapidated condition that it constitutes a fire hazard, and further, where it is shown that a fire of unknown origin actually occurs within the premises which results in damage to adjoining properties, such evidence is sufficient to give rise to a permissible inference that the owner's alleged negligence was a substantial factor in either causing the ignition or facilitating the spread of the conflagration resulting in the loss to the adjoining property owners. When such evidence is in the case, the liability of the allegedly negligent property owner is a question properly left for resolution by the jury. The principle as stated is merely a procedural doctrine, the effect of which is to raise an *inference* to a causal nexus between the alleged negligence and the harm, and to shift to the defendant the

burden of going forward with the evidence, thus taking all such cases to the jury.

At the outset, it should be noted that while the rule I espouse in this opinion is novel to this jurisdiction, the theory upon which it is based is well established in the law of other jurisdictions. The general rule appears to be that an owner of property is *not liable* for the spread of fire started upon the owner's property by a stranger or by some other cause with which the owner has no connection, where he has not been negligent with respect to the condition of his premises. *See* Annot. 18 A.L.R.2d 1081, 1093–95. However, the critical question in determining the property owner's liability turns upon whether his neglect has rendered the condition of the premises a fire hazard. A number of jurisdictions have held that an owner of property which has been negligently left in such a condition that it is easy for a fire to ignite thereon, or to spread to neighboring premises, is liable for damage resulting from a fire even though the fire starts by pure accident, by an act of a third party or some other source for which he would not otherwise be held responsible. *See Scally v. Pacific Gas & Electric Co.,* 23 Cal.App.3d 806, 100 Cal.Rptr. 501 (1970); *Reid & Sibell, Inc. v. Gilmore & Edwards Co.,* 134 Cal.App.2d 60, 285 P.2d 364 (1955); *Little v. Lynn & Marblehead Real Estate Co.,* 301 Mass. 156, 16 N.E.2d 688 (1938); *Menth v. Breeze Co.,* 4 N.J. 428, 73 A.2d 183 (1950); *Arneil v. Schnitzer,* 173 Or. 179, 144 P.2d 707 (1944); *Prince v. Chehalis Savings & Loan Assoc.,* 186 Wash. 372, 58 P.2d 290, *aff'd on reh.,* 186 Wash. 377, 61 P.2d 1374 (1936); Annot., 18 A.L.R.2d 1081, 1095; Annot., 111 A.L.R. 1140, 1148; 22 Am.Jur., Fires, § 12 (1957). The Washington Supreme Court, in *Prince v. Chehalis Savings & Loan Association, supra,* stated the rule as follows:

"[E]vidence as to the origin of the fire is not a necessary element to entitle a recovery where the property causing the fire has gotten into such a condition that it creates a fire hazard, and that, if fire should occur in it, it is reasonably probable that it would spread to the adjacent property." Id. at *375,* 58 P.2d at 292.

Although not expressly articulated, the rationale for this rule appears to be that where a defendant's negligence results in the creation of a fire hazard, and a fire actually occurs in the area within which the defendant's alleged negligence was operating, the factfinder may *infer* that the hazard so created was a substantial factor in producing the injury, i.e., fire damage. This inference of causation is not conclusive, and unlike a rebuttable presumption, may be rejected by the factfinder even in absence of evidence contrary to the inferred fact. *See* Wigmore, Evidence, § 2490 (3d Ed. 1940). When the evidence in a case establishes that the condition created by the defendant's negligence actually constituted a fire hazard; that is, created an unreasonable risk that a fire might ignite thereon, or an unreasonable risk that a fire, once ignited, would spread to adjoining premises; and that a conflagration actually occurred thereon, it does no violence to our jurisprudence to permit the factfinder to conclude, solely from these facts, if it chooses to do so, that there existed a causal relationship between the conduct of the defendant landowner and the resultant harm.[1]

The policy reasons underlying the inference of causation in the factual context of the instant case derive from the reality of today's congested urban society and the inherent dangers that neglected and dilapidated premises present to the lives and property of adjoining residents. Further, the use of this procedural device is justified since the property owner has possession and control of the premises and is in a much better position to obtain information or evidence re-

1. The question of whether the condition of the premises in fact constituted a "fire hazard", such as will give rise to the permissible inference of causation, must be resolved by the jury. In this respect, I therefore do not believe that the meaning of fire hazard must be confined to solely an "accumulation of combustible or inflammable materials" on the premises. *See Menth v. Breeze Co.,* 4 N.J. 428, 73 A.2d 183 (1950). In my judgment, the fact of an accumulation of combustibles is only *one* basis for concluding that a particular property is in fact a fire hazard. The plaintiff has the responsibility of producing competent evidence to demonstrate that the deteriorated condition of the premises did in fact render it a fire hazard. Once such testimony has been introduced, it is then appropriate for the finder of fact to resolve the issue.

garding the cause of a conflagration occurring thereon. Our law recognizes that a defendant's exclusive control of an instrumentality causing injury is one circumstance which will invoke this Commonwealth's procedural rule allowing a permissible inference of *negligence* to be drawn against that defendant. *See* Restatement (Second) of Torts § 328D, comment g (1965); *Gilbert v. Korvette's, Inc.,* 457 Pa. 602, 327 A.2d 94 (1974). The application of this exclusive control rationale to circumstances permitting an inference of a causal nexus between negligence and injury is not novel. Indeed, the California Supreme Court adopted this reasoning in its landmark decision in *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948), explaining that:

" . . . 'the particular force and justice of the rule . . . consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to [the defendant] but inaccessible to the injured person.' " *Id.* at *87,* 199 P.2d at 4, *quoting from, Ybarra v. Spangard,* 25 Cal.2d 486, 490, 154 P.2d 687, 689 (1943).

It should be emphasized that I do not go as far as the *Tice* Court, since here I am only suggesting a permissible inference of causation, whereas in that case the Court articulated a rebuttable presumption of cause.

Finally, the distinction sought to be made by the majority between this Court's decision in *Githens, Rexsamer & Co., Inc. v. Wildstein,* 443 Pa. 480, 277 A.2d 157 (1971), and the issue presented in this appeal is in my judgment without substance. In each instance the question posed was whether or not the condition of the property was sufficiently related to the harm as to justify a finding that the defendant's conduct was a legal cause. In fact, there was probably a stronger basis in *Githens* for arguing that the hazardous condition there alleged created an unreasonable risk that a fire once started would *spread* than there is here for concluding that the instant condition increased the risk that a fire might *ignite.*

ROBERTS and POMEROY, JJ., join in this opinion.