## Elia v. O'Neil

*Joseph P. Valentino,* for plaintiff.
*Gregg A. Guthrie,* for defendant.

DOBSON, *J.,* October 25, 2005—This opinion is written pursuant to Pennsylvania Rule of Appellate Procedure 1925 following defendant's timely appeal from the order of September 2, 2005, granting plaintiff's motion for judgment n.o.v. and ordering a new trial solely on the issues of damages.

This case arises out of a motor vehicle accident on November 17, 1995, involving motor vehicles driven by plaintiff and defendant. Plaintiff commenced this action by filing a writ of summons on October 28, 1997. The complaint was filed on August 17, 1998.

A jury trial commenced on August 10, 2005. During defendant's counsel's opening, counsel conceded plaintiff was not at fault for the accident.

At the conclusion of the evidentiary phase of the trial, this court found defendant negligent as a matter of law.

The questions of whether or not defendant's negligence was a substantial factor in causing plaintiff's injuries and what damages plaintiff was entitled to were submitted to the jury.

On August 11, 2005, the jury found the defendant's negligence was not a substantial factor in bringing about plaintiff's harm.

Plaintiff filed timely post-trial motions. After oral argument on September 2, 2005, this court granted plaintiff a judgment n.o.v. in plaintiff's favor on the question of substantial factor and ordered a new trial on the issue of damages.

The sole issue raised on appeal is whether or not this court abused its discretion and/or committed an error of law in granting plaintiff's motion for judgment n.o.v.

"There are two bases upon which a judgment n.o.v. can be entered: one, the amount is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Ty-Button Tie Inc. v. Kincel and Co. Ltd.*, 814 A.2d 685, 690 (Pa. Super. 2002), *reargument denied.* (citations omitted)

"The decision whether to grant a new trial is within the sound discretion of the trial court. . . . [A] new trial is

warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. However, a new trial should not be granted because of a mere conflict in testimony or because the trial judge, on the same facts, would have arrived at a different conclusion." *Mano v. Madden*, 738 A.2d 493, 495-96 (Pa. Super. 1999) (en banc). (citations omitted)

Viewed in the requisite light, the essential facts of this case may be summarized as follows:

On November 17, 1995, at approximately 7 p.m., plaintiff was traveling south and defendant was traveling north on Mercer Avenue in the Borough of Sharpsville, Pennsylvania. Defendant pulled into plaintiff's lane of traffic when he realized he could not stop in time to avoid striking the rear of a truck he had been following that had come to a stop. Plaintiff pulled his vehicle as far to the right as he could to try and avoid a collision, but was unable to do so. The vehicles collided head-on. Plaintiff's car's airbag deployed. Each vehicle sustained several thousand dollars in damage. A police officer had to pull out the fender on plaintiff's car so that he could drive the car home.

Plaintiff noticed he had chipped a molar in the accident, but did not notice any other injuries at the scene other than some pain in his neck and back.

The pain in plaintiff's neck and back significantly worsened over the next several hours. Plaintiff, a practitioner of holistic medicine, chose to treat himself with a combination of massage therapy, hot and cold compresses, acupuncture and magnets.

When the pain failed to lessen after three months, plaintiff went to a Dr. Baumeier. Dr. Baumeier treated

him with moist heat, electrical stimulation, and neuro-muscular massage, and prescribed plaintiff Vitamin B-6. After several visits, plaintiff resumed treating himself.

When the pain failed to lessen, plaintiff went to the Neural Spinal Clinic in May of 1996. He underwent chiropractic manipulations as well as receiving moist heat, electrical stimulation and neuromuscular massage three times a week into September of 1996, when his insurance benefits ran out.

Plaintiff resumed treating himself as needed over the next several years.

In August of 2003, plaintiff went to see another chiropractor. After several months of treatment, the chiropractor referred the plaintiff to a pain center.

Plaintiff was examined by Dr. Joseph Stoner at the Pain Clinic. Dr. Stoner diagnosed the plaintiff as suffering from: "(1) cervical-thoracic sprain/strain; (2) cervical-thoracic joint dysfunction; (3) cephalgia/occipital neuralgia; (4) left jaw pain; (5) right shoulder pain; (6) lumbo-sacral sprain/strain; (7) lumbo-sacral joint dysfunction; (8) left hip pain; and (9) myofascial pain syndrome." (Dr. Stoner deposition, p. 16.) Dr. Stoner found these injuries to be permanent and to have all been caused by the accident of November 17, 1995.

Plaintiff underwent an IME by Dr. William Abraham on September 29, 2004. It was Dr. Abraham's opinion that if plaintiff sustained any injuries as a result of the accident, those injuries had "long since resolved" and he has no ongoing problems. (Dr. Abraham's deposition, p. 34.) He did note, however, plaintiff had a chipped molar

in an x-ray taken July 2, 1996. (Dr. Abraham's deposition, pp. 57-58.)

On four separate occasions, Dr. Abraham was asked if plaintiff was injured. Each time his answer was essentially the same:

"I think that a couple of things. One was that I did not obviously have an opportunity to examine him on that day to look for those sorts of things, but I think that based on his history, what he told me, his experiencing pain after the accident in a variety of locations that I discussed earlier, they could those types of complaints could be consistent with what I would describe as soft tissue injuries." (Dr. Abraham's deposition, pp. 33-34);

"I think that's a good question. I don't think that I can do anything other than to gather the history that he's given to me and make comments as I did in my report, but certainly his subjective complaints afterwards could be compatible with a soft tissue or soft tissue injuries, and I think that's probably the most that I can say." (Dr. Abraham's deposition, p. 41);

"I would say it's hypothetical that he did. I'm merely here pointing out that he offered subjective complaints after an accident, and those would be or could be compatible with soft tissue injuries. I'm not sure again, unless we were all there, that anybody can say for certainty that he did or didn't have an injury." (Dr. Abraham's deposition, p. 42); and

"And again I've offered my opinion. As I stated earlier, Mr. Elia describes, you know, complaints of pain after the accident in question, and those could be compatible with an injury. I was not there. I examined him

years down years later, as you've already pointed out, and the best that I can say is that he may have had an injury based on his subjective complaints, and if he did, it appeared to be a minor injury and has long since resolved." (Dr. Abraham's deposition, p. 63.)

A "substantial" factor is "conduct (that) has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense." *Jeter v. Owens-Corning Fiberglas Corp.*, 716 A.2d 633, 636 (Pa. Super. 1998) (quoting Restatement (Second) of Torts §431 (1965)) (citing *Ford v. Jeffries*, 474 Pa. 588, 595, 379 A.2d 111, 114 (1977)). "Under the law of Pennsylvania, a cause can be found to be substantial so long as it is significant or recognizable; it need not be quantified as considerable or large." *Id.* at 636.

The issues of whether or not a plaintiff was really suffering any pain and whether or not such pain was caused by the defendant's conduct are generally issues for the jury. *Holland v. Zelnick*, 329 Pa. Super. 469, 478 A.2d 885 (1984). "[T]he existence of compensable pain is an issue of credibility and juries must believe that (a plaintiff) suffered pain before they compensate for that pain." *Davis v. Mullen*, 565 Pa. 386, 396, 773 A.2d 764, 769 (2001).

Where the defense concedes the existence of an injury, a judgment n.o.v. will be sustained when a jury determines a defendant's negligence was not a substantial factor in bringing about a plaintiff's injury. See *Kruczkowska v. Winter*, 764 A.2d 627 (Pa. Super. 2000); *Craft v. Hetherly*, 700 A.2d 520 (Pa. Super. 1997).

This court believes the evidence shows defendant effectively conceded the existence of an injury in two ways.

The first way involves the chipping of one of plaintiff's molars. Defendant never contested this injury. Moreover, the defendant's expert noted the existence of a chipped molar in an x-ray taken several months after the accident. While such an injury may be minor, it still is an injury and a jury must determine what damages should be awarded.

The second way involves the testimony of Dr. Abraham regarding whether or not plaintiff sustained any injury. In essence, Dr. Abraham's testimony is that he does not know if plaintiff was injured because he was not at the scene of the accident, but his reported symptoms are consistent with a soft tissue injury. This court believes such testimony effectively concedes plaintiff suffered some injury given the severity of the accident, plaintiff's age at the time of the accident, 63, and Dr. Abraham's diagnosis that plaintiff had pre-existing degenerative arthritis problems at the time of the accident. To conclude otherwise elevates form over substance to the point of absurdity.

This court recognizes this conclusion would appear contrary to the holding in *Holland v. Zelnick,* 329 Pa. Super. 469, 478 A.2d 885 (1984), and its progeny. The facts in this case are substantially different than those in *Zelnick.*

In *Zelnick,* plaintiff was a 22-year-old college graduate whose vehicle was "bumped" in the rear while stopped at a traffic light. "Plaintiff sought no medical treatment immediately after the accident, continued to work with-

out interruption for more than a year after the accident, swam, jogged, sat through sporting events, . . . , and frequently drove from Washington, D.C. to Shamokin, PA a three and a half-hour trip, alone and without aid after the accident." *Holland v. Zelnick,* 329 Pa. Super. at 474-75, 478 A.2d at 887. The plaintiff's complaints involved alleged soft tissue to her neck.

In the case at hand, the accident was of sufficient force to cause plaintiff's airbag to deploy and several thousand dollars in damage to each vehicle. Plaintiff was 63 and suffering from pre-existing degenerative arthritic problems. While plaintiff did not seek immediate medical care, he did not fail to do so for lack of need. Plaintiff did so because of his distrust of the mainstream medical community. Plaintiff treated his problems in the manner he believed in. To penalize him for doing so would be fundamentally wrong.[1] Finally, the plaintiff's activities have been limited as a result of his problems.

Given the dramatic differences between the two cases, the expert's testimony in *Zelnick* that plaintiff might very well have suffered such an injury and Dr. Abraham's testimony that plaintiff's subjective complaints afterward could be compatible with a soft tissue or soft tissue injury must be viewed differently by the court.

---

1. One of the fears of the court is that the jury in this case did so. Plaintiff's views regarding the medical profession are so extreme that he comes off as an unlikeable crack-pot. While plaintiff's views may be unpalatable, that does not mean he was not injured.