NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2481
_____

CHETTY HOLDINGS INC; CARL E. CHETTY,
T/A Millville Apartment Homes, LP,

                                                    Appellants

v.

NORTHMARQ CAPITAL, LLC; TIMOTHY C. KUHN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-11-cv-04640)
District Judge: Thomas N. O'Neill, Junior
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2014

Before:  FUENTES and FISHER, *Circuit Judges*, and STARK,* *District Judge*.

(Filed: February 10, 2014)
_____

OPINION
_____

---

*The Honorable Leonard P. Stark, District Judge for the United States District
Court for the District of Delaware, sitting by designation.

FISHER, *Circuit Judge.*

Appellants Chetty Holdings, Inc. and Carl E. Chetty (collectively, "Chetty") appeal the District Court's dismissal of their third amended complaint. Chetty alleged that Appellees NorthMarq Capital, LLC ("NorthMarq") and its employee Timothy C. Kuhn (collectively, "Appellees") were negligent and made certain negligent misrepresentations that prevented Chetty from obtaining a mortgage refinancing loan insured by the United States Department of Housing and Urban Development ("HUD"). Because the District Court properly concluded that Chetty failed to establish proximate cause, we will affirm.

## I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Chetty financed the purchase of the Millview Apartment Homes (the "Millview Property") through a fifteen-year forward mortgage for approximately $27 million with Northwestern Mutual Life Insurance Company ("Northwestern Mutual"). The mortgage contained a provision that imposed a prepayment penalty in the event Chetty sought to pay off the mortgage in full. In response to the financial crisis and a downturn in occupancy, Northwestern Mutual offered to waive the prepayment penalties to allow Chetty to refinance the loan on the Millview Property in early 2009.

2

Shortly thereafter, Kuhn (on behalf of NorthMarq) initiated discussions with Chetty about securing a loan for the refinancing. Kuhn reviewed the financial status of the Millview Property and Chetty Holdings and recommended that Chetty apply for a refinancing loan through NorthMarq's underwriting arm, AmeriSphere Mortgage Finance, LLC ("AmeriSphere").[1] Chetty alleges that Kuhn was the "point person for Plaintiffs throughout the [application] process," and that Kuhn made negligent misrepresentations about the application process and the anticipated outcome. App. at 349. Kuhn presented Chetty with a proposed engagement letter on July 7, 2009 that purported to set forth an agreement between Chetty and AmeriSphere, in which AmeriSphere would "provide Mortgage Insurance processing services . . . for a mortgage loan." App. at 231. Pursuant to the engagement letter, Chetty provided a substantial amount of information and documentation to AmeriSphere about the Millview Property.

Before Northwestern Mutual would issue a written modification of the terms of the mortgage (by waiving the prepayment penalty), it requested a timeline for completion of the refinance application process. Kuhn provided the timeline, which specified "*approximate*" start and end dates for each phase, and specified that the dates were "*anticipated* subsequent milestones related to the . . . refinance." App. at 75 (emphasis added). The timeline provided that the loan was anticipated to close by July 31, 2010.

---

[1] The third amended complaint indicates that Chetty was to apply for a "223(f) FHA/HUD loan." App. at 348. As noted by Appellees, AmeriSphere agreed to provide the loan, provided that Chetty secured mortgage insurance from HUD. Appellees' Br. at 22 n.10. AmeriSphere is no longer a party to this case.

Northwestern Mutual thereafter issued a written loan modification agreement that waived the prepayment penalty until July 31, 2010. Kuhn allegedly represented to Chetty that Northwestern Mutual would be lenient with imposing the prepayment penalty, even after the July 31, 2010 date.

Kuhn "strenuously objected" to Chetty's attempts to list the Millview Property for sale, and Chetty turned down one offer to purchase the property. App. at 353. Chetty therefore alleges that Appellees negligently failed to recommend that Chetty pursue the sale of the Millview Property while applying for the refinance loan to ensure that either the loan would close or the property would sell before the waiver period ended.

In April 2010, AmeriSphere completed Chetty's application. AmeriSphere's internal loan processing committee assessed and approved the application, concluding that it met all essential criteria for HUD's firm commitment to insure the loan. Chetty wired a $95,040 application fee to AmeriSphere, which was sent, along with the application, to HUD. HUD denied Chetty's application on July 30, 2010 due to Chetty's failure to make timely payments on its existing mortgage and the Millview Property's inconsistent occupancy. Chetty alleges it then "had no choice but to pursue a sale of the Millview Property" after the July 31, 2010 deadline. App. at 358. As a result of that sale, Chetty incurred $2.6 million in prepayment penalties, in addition to the $95,040 application fee, a $5,000 processing fee paid to NorthMarq, and $22,000 in consultant fees, also paid to NorthMarq.

4

Chetty filed suit in the District Court and filed a third amended complaint on May 25, 2012, asserting claims for negligence and negligent misrepresentation. By Memorandum Opinion and Order dated April 22, 2013, the District Court dismissed the third amended complaint on the ground that Chetty failed to adequately plead the necessary element of proximate cause. This appeal timely followed.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise *de novo* review over the grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009) (citing *AT&T v. JMC Telecom, LLC*, 470 F.3d 525, 530 (3d Cir. 2006)). When analyzing a motion to dismiss we, like the district court, "must accept all of the complaint's well-pleaded facts as true . . . [and] must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Conclusory allegations without factual support are insufficient to survive the plausibility standard. *Id.* at 210.

## III.

The parties dispute the extent to which proximate cause may be determined by the court. Chetty maintains that proximate cause is an inherently fact-based question that

should generally be resolved by a jury. *See Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977) (explaining that the issue of proximate cause "should not be taken from the jury *if the jury may reasonably differ* as to whether the conduct of the defendant was a substantial cause or an insignificant cause" (emphasis added)). Appellees counter that proximate cause is a question of law properly decided by the court. *See Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1233 (Pa. 1983) (recognizing that proximate cause is an issue of legal policy); *Eckroth v. Pa. Elec., Inc.*, 12 A.3d 422, 427-28 (Pa. Super. Ct. 2010) (stating that proximate cause is an issue of law for the court to determine). As *Ford* makes clear, however, nothing precludes a court from determining proximate cause as a matter of law if a jury could not reasonably differ on the issue. 379 A.2d at 114. Because a jury could not reasonably conclude that Appellees' alleged actions proximately caused Chetty's injury, the District Court did not err in dismissing the case.

A party suing for negligence must prove, *inter alia*, causation between the alleged wrongful act and the plaintiff's alleged injuries.[2] *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1103 (Pa. 2012) (Todd, J., dissenting). Proximate or legal causation is "that point at which legal responsibility should attach to the defendant as a matter of fairness because the plaintiff has demonstrated . . . that the defendant's act was a 'substantial factor' or a 'substantial cause,' as opposed to an 'insignificant cause' or a 'negligible cause,' in

---

[2] Causation is a necessary element in both negligence and negligent misrepresentation claims. *See Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) (negligent misrepresentation under Pennsylvania law); *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (negligence).

bringing about the plaintiff's harm." *Id.* (quoting *Ford*, 379 A.2d at 114). Pennsylvania courts have adopted the "substantial factor" theory of proximate cause from Restatement (Second) of Torts § 431 (1965). *Ford*, 379 A.2d at 114. Under § 431, an "actor's negligent conduct is a legal cause of harm to another if [] his conduct is a substantial factor in bringing about the harm . . . ." Restatement (Second) of Torts § 431.

Pennsylvania has also adopted the Restatement's definition of "substantial factor." *See* Restatement (Second) of Torts § 433 (1965); *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 56 n.36 (Pa. 2012) (acknowledging that the Pennsylvania Supreme Court "has cited Section 433 as consistent with Pennsylvania law" (citing *Vattimo*, 465 A.2d at 1233-34)). Section 433 provides:

> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
> (c) lapse of time.

Restatement (Second) of Torts § 433. The District Court properly took these considerations into account in finding that no jury could reasonably conclude that Appellees' negligence—if proved—was a substantial factor in causing Chetty's alleged injury.

7

The District Court identified a number of "other factors" that contributed substantially to Chetty's injury. Chief among them were Chetty's agreement to a mortgage that included substantial prepayment penalties and Chetty's decision to sell the Millview Property. Appellees had no involvement in those decisions, and it was Chetty's decision to sell the Millview Property—not any negligence on Appellees' part—that ultimately led Chetty to incur the $2.6 million in penalties due to Northwestern Mutual.

Appellees likewise had no control over HUD's decision to reject the application for mortgage insurance. Instead, the rejection was the result of several additional factors identified by the District Court, including: (1) the drop in occupancy at the Millview Property; (2) Chetty's failure to make timely payments on the mortgage; and (3) HUD's conclusion that Chetty did not qualify for a loan and its refusal to provide insurance. Although Chetty maintains that Appellees' negligence caused HUD's rejection (and the resulting fees), that argument misses the mark. The complaint indicates that it was AmeriSphere, not NorthMarq or Kuhn, whose "internal loan processing committee had approved Plaintiffs' application and determined that Plaintiffs' application met all of the essential criteria for the issuance of a HUD Firm Commitment." App. at 355. Taken together, these external factors were the substantial factor that brought about Chetty's alleged harm.

Other pleaded facts demonstrate how Appellees' conduct merely "created a situation harmless unless acted upon by other forces for which [they are] not

8

responsible." Restatement (Second) of Torts § 433(b). Assuming Appellees were negligent (as we must) does not change the substantial impact of: (1) the economic hardships on the Millview Property; (2) HUD's decision to reject the loan insurance application; and (3) Northwestern Mutual's decision not to extend the penalty waiver. These facts independently operated to derail Chetty's application and led to imposition of the resulting prepayment penalty. Appellees' encouragement of the refinance was "harmless" absent these external factors.

Chetty focuses on the timeline[3] as evidencing Appellees' control over when the prepayment penalties began to accrue. This argument fails, however, because the timeline makes clear that it merely sets forth "*anticipated* subsequent milestones" for the refinancing, and includes only "*approximate*" start and end dates for each stage. App. at 75 (emphasis added). It was ultimately Northwestern Mutual that made the decision about when it would no longer suspend the prepayment penalties. Moreover, this argument misses the larger point that it was the sale *after* the deadline—not the deadline itself—that caused Chetty to incur the prepayment penalties.

Finally, the engagement letter informed Chetty of the risks by noting that "FHA *may* issue an FHA Firm Commitment. *If* the FHA Firm Commitment is issued . . ." App.

---

[3] Both the timeline and the engagement letter (discussed *infra*) are referenced in the complaint and are part of the record on appeal. They may, therefore, be considered at the motion to dismiss stage. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (acknowledging that a court may consider the allegations in the complaint and documents referenced therein when deciding a motion to dismiss).

at 232 (emphasis added). The letter further provided that "[t]his Engagement is not and shall not be construed as a commitment of or by Lender to make the Loan or any other loan to you," and "[t]he Borrower understands, acknowledges and agrees that: (i) Lender has not made any representations or warranties regarding the results of the FHA Mortgage Insurance processing . . . . While Lender will seek to obtain an FHA Firm Commitment and provide a Loan at an interest rate satisfactory to you, we cannot promise or otherwise assure you that we will be successful." App. at 234. The complaint acknowledges that Kuhn gave this notice to Chetty. Even assuming Appellees negligently advised Chetty during the application process, Chetty was very much aware that the HUD insurance was not a foregone conclusion. This bolsters the District Court's conclusion that any negligence merely created a situation that was harmless absent the myriad causative factors discussed above.[4]

Appellees could not guarantee that Chetty would receive the financing and Chetty acknowledged that fact. The costs incurred were likewise the result of Chetty's own decisions and of matters outside Appellees' control. The District Court looked to these facts and properly concluded that they satisfied two elements of the Restatement's

---

[4] Chetty argues that none of the factors considered by the District Court were "the type of 'superseding cause' necessary to absolve [Appellees] of their liability." Appellants' Br. at 23-27. This argument likewise fails because the District Court did not rely upon a "superseding cause" analysis; instead, it properly followed the Restatement by considering the "other factors which contribute[d] in producing the harm" and concluding that Appellees' negligence was not a substantial factor in causing Chetty's harm. Restatement (Second) of Torts § 433(a).

10

definition of substantial factor. *See* Restatement (Second) of Torts § 433 ("The following considerations are *in themselves or in combination with one another* important in determining whether the actor's conduct is a substantial factor . . ." (emphasis added)). In light of these facts, no jury could reasonably conclude that Appellees' alleged negligence proximately caused Chetty's injury.

IV.

For the above stated reasons, we will affirm the District Court's dismissal of Chetty's third amended complaint.