## Van *v.* Richmond et al., Appellants.

*Master and servant—Bricklayer—Fall of brick arch on workman
—Assumption of risk—Contributory negligence—Conflicting evi-
dence—Preponderance of evidence with defendant—Case for jury.*

1. The credibility of oral testimony is for the jury.

2. Where the testimony offered by the plaintiff makes out a
prima facie case by showing the existence of facts from which an
inference of negligence arises, the case is necessarily for the jury,
notwithstanding that the great preponderance of the testimony is
with the defendant. An inference of negligence having once arisen
remains until overcome by countervailing proof, and whether it is
so overcome is a question for the jury.

3. In an action against building contractors to recover for in-
juries sustained by the falling of a brick arch on a workman, where
it appeared that during the construction of the building plaintiff
was assigned by the defendants to build such arch on a supporting
wooden form erected by defendants' carpenters, that after the com-
pletion of the arch it fell on the plaintiff causing the injuries com-
plained of, and the evidence was conflicting as to how the fall of
the arch was occasioned, plaintiff's version being that the form
had been removed at the direction of defendants' foreman, that
plaintiff had complained to him of its removal but that the fore-
man had assured him that it was safe, that relying upon the fore-
man's forty years' experience plaintiff continued at his work and
three quarters of an hour later the arch fell, while defendants' ver-
sion was that the form had not been removed but that the arch
fell by reason of plaintiff's placing his body or leg over it, causing
it to buckle, and that plaintiff had admitted thereafter that the oc-
currence was his own fault, the court did not err in refusing to
charge that as a matter of law plaintiff had assumed the risk.

4. In such case the court did not err in refusing to charge that
the duty rested on the plaintiff to establish by the weight of evi-
dence that there was no act or omission on his part, as an experi-
enced bricklayer, amounting to want of ordinary care, which con-
curred with the alleged negligence of the defendants in causing
the injury.

Argued Oct. 18, 1917. Appeal, No. 79, Oct. T., 1917,
by defendants, from judgment of C. P. Allegheny Co.,
Jan. T., 1916, No. 1848, upon verdict for plaintiff in case

of J. Wesley Van v. Andrew Richmond and John L. Richmond, Copartners, trading and doing business as A. Richmond & Son, with notice to W. J. Morrison, Administrators of Andrew Richmond, deceased. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass for personal injuries.

The facts appear from the following opinion by BROWN, J., sur defendants' motions for a new trial and for judgment non obstante veredicto:

Plaintiff, a bricklayer employed by defendants in building a residence, brought this action to recover damages for personal injuries received on the 7th of August, 1915—injuries to his arm, back, head and sight and hearing, causing pain and suffering and loss of earnings and impaired power to work and to earn.

Plaintiff's story, as told by himself and witnesses, was: that on August 6, 1915, carpenters—at direction of defendants' foreman—having put in place a supporting wooden form, he built thereon a brick arch, using mortar furnished by defendants. The brick arch was completed that day—leaving for the next day the laying of brick on the sides next the arch. When plaintiff came to work on the morning of the 7th, discovering the supporting wooden form had been taken out, at the direction of defendants' foreman, he complained to the foreman about the question of safety; and the foreman told him it was safe—to go ahead with the work; and resting upon the superior knowledge of the foreman of forty years' experience he went on with the brick work—at the sides next the arch; and three-quarters of an hour later the arch buckled and fell, striking and carrying him, and the platform on which he was, down some nine or ten feet.

Touching this question of safety—at the time plaintiff went to work the morning of June 7th—we quote a portion of his testimony:

Q.—Before you went to work did you say anything to Mr. Briggs (foreman) about the safety of this thing?

A.—I did.

Q.—What did you say to him?

A.—I told him it was not safe, and he promised to get a prop and put it up there to save it from falling.

Q.—Save what from falling?

A.—The arch from buckling. It didn't look safe to me, and I mentioned it to him.

Q.—Did he think it was safe?

A.—Yes, sir; he told me it was safe and I relied on his word for it to be safe.

Q.—Then did he tell you to go to work?

A.—Yes, sir.

Q.—Instructed you to go to work did he?

A.—Yes, sir.

Q.—And told you it was safe?

A.—Yes, sir.

Q.—Was there anything about it that looked as though the thing would fall immediately?

A.—Well, it didn't look just right.

Q.—It wasn't cracked, was it?

A.—No, sir.

Q.—And didn't look as though it was going to fall that instant?

A.—No, sir.

Q.—Looked as though it might hold itself for awhile?

A.—Yes, sir.

Q.—How long did it hold itself?

A.—About three-quarters of an hour.

Q.—After you started to work?

A.—Yes, sir.

Q.—What caused that thing to break?

A.—It buckled.

It will be observed by this testimony that plaintiff—awaiting fulfillment of the foreman's promise to put up props, to support the arch—was not working under nor in front of the arch, but at the side, laying and building

up the brick work; and therefore not exposing himself under nor in front of the arch.

Defendant's story, as told by their witnesses, was: that the supporting wooden arch had not been taken out by the carpenters, nor directed to be taken out, as alleged by plaintiff; that plaintiff was not working on brick construction at the sides of the arch—at the time of the accident, but just preceding the accident, had placed his body or leg over the arch, causing it instantly to buckle and fall.

Plaintiff denied placing his body or leg over the arch.

Some of the defendant's witnesses testified to plaintiff's admission, on several occasions, that the injury was all his own fault, and nobody to blame but himself. Plaintiff alleged the admissions were due to fear that he might not be employed or able to get work.

The credibility of the testimony—all oral—was for the jury: Lindemann v. Pittsburgh Railways Co., 251 Pa. 489; Anderson v. Railways Co., 251 Pa. 517. Credibility is the touchstone of testimony in the measure of its weight. As said by Mr. Justice FELL, in Rauch v. Smedley, 208 Pa. 175, 176, and by Mr. Justice STEWART in Simons v. Philadelphia & Reading Ry. Co., 254 Pa. 507-509:

"Where the testimony offered by the plaintiff makes out a prima facie case by showing the existence of facts from which an inference of negligence arises, the case is necessarily for the jury, notwithstanding that the great preponderance of the testimony is with the defendant. An inference of negligence having once arisen remains until overcome by countervailing proof, and whether it is so overcome is a question for the jury."

The charge presented to the jury: The issues of fact to be passed on by it; the method of weighing and measuring testimony—lay and expert; the duty of determining the nature and extent of plaintiff's injuries—nervous and physical; and the measure of damages. And its attention was drawn to the duty resting upon an employer

to furnish his employee with a reasonably safe place to work and proper tools and appliances; and upon an employee not to be careless of himself in the line of his work. Its attention was also drawn to the question of plaintiff's equal or unequal knowledge of the danger—and whether he acted and had the right to act upon the superior knowledge of the foreman of forty years' experience: Molesky v. South Fork Coal Mining Co., 247 Pa. 434.

The reasons assigned by defendants for a new trial are:

1. The verdict in said case is contrary to the evidence.

2. The verdict in said case is contrary to the weight of the evidence.

3. The verdict in said case is contrary to law.

4. The court erred in refusing defendants' second, sixth, twelfth, thirteenth, fourteenth and fifteenth points submitted.

Defendants' second, sixth, twelfth, thirteenth, fourteenth and fifteenth points—with the answers of the court thereto—are as follows:

"Second: If the jury believe that plaintiff was directed by defendants' foreman to continue his work at the arch after the form was removed before sufficient support had been placed under the arch, and plaintiff continued his work as a brick mason, notwithstanding, he assumed the risk involved and therefore cannot recover.

By the Court: As a whole, this point is refused because it involves an issue of fact to be passed on by the jury—an issue of fact covered by the general charge.

Sixth: Plaintiff must establish by the weight of evidence that there was no act or omission on his part as an experienced bricklayer, amounting to a want of ordinary care, which in concurrence or coöperation with the alleged negligence of defendants was the proximate cause or occasion of the injury.

By the Court: This point is refused, because the burden of establishing plaintiff's acts of omission—want of care—is on the defendant.

Twelfth: If the jury believe that plaintiff just before the accident could have proceeded with his work of laying up brick in against the wall without first building the temporary or foot staging, the breaking of which by the fall of brick from the arch caused him to fall, he was guilty of contributory negligence and cannot recover.

By the Court: Refused.

Thirteenth: It appearing by a preponderance of testimony that plaintiff admitted on numerous occasions afterwards that the accident was caused by his own carelessness, as testified to by Addison Brieges or Briggs, John Cornyn, Sr., John Cornyn, Jr., Solomon Wensel and John L. Richmond, the jury should be instructed to find for the defendants.

By the Court: Refused.

Fourteenth: It appearing from uncontradicted evidence that plaintiff could have proceeded to point up the courses of the pier by standing upon a ladder, placed upon the outside of the pier, his failure to do so constitutes contributory negligence and is a bar to his recovery.

By the Court: Refused.

Fifteenth: That under all the evidence in the case the court should direct that the jury render its verdict in favor of the defendants.

By the Court: Refused.

We cannot say that the verdict is contrary to the evidence, the weight of the evidence, and the law.

In the light of (a) the disputed issues of fact and (b) the law—as outlined in the charge—we think no substantial error was committed by the court in its answers to defendants' points.

Close as the case was upon its conflicting testimony it raised issues of fact upon which the jury alone had power to pass and decide.

Believing that a fair trial was had the motions for judgment non obstante veredicto and for a new trial are refused.

*J. Boyd Duff,* of *J. Boyd Duff & Son,* with him *Packer & Sherrard,* for appellants.

*Stephen Stone,* of *Stone & Stone,* with him *J. Thomas Hoffman,* for appellee.

PER CURIAM, January 7, 1918:

The judgment in this case is affirmed on the opinion of the learned court below denying the motions for a new trial and for judgment non obstante veredicto.

---

## Kennedy et al., Appellants, *v.* Meyer et al.

*Constitutional law — Constitution of Pennsylvania, Art. III, Secs. 7 and 11, Art. IX, Sec. 7, and Art. I, Sec. 1—Declaration of Rights—Local and special laws — Gratuities — Contractors — Encroachment on judicial prerogatives—Counties—Contracts—Work done under unconstitutional act—Curative act—Constitutionality— Acts of May 11, 1909, P. L. 506, and April 20, 1917, P. L. 90—Statutes—Construction—Bill in equity—Injunction—Dismissal.*

1. All presumptions must be drawn in favor of the validity of an act and the propriety of the legislative intention.

2. The courts are loath to hold curative acts to be special or local legislation when they are drawn to apply to all persons, things or subjects affected by the conditions to be remedied.

3. Where an act relating to counties in terms applies to all counties in the State, it is presumptively a general statute.

4. Where the legislature has power to enact the substance of the matter covered by a statute which has been declared void because unconstitutional in form, it may subsequently ratify and make legal anything done under the prior void legislation which it might previously have authorized in due form.   The authority of the legislature to ratify whatever it might have authorized is beyond question.

5. The Act of April 20, 1917, P. L. 90, providing that whenever any county has entered into a contract for the construction of a public highway bridge or tunnel and the same has been completed in whole or in part, but (the county) was without power to pay for the work which had been actually done (because the act under