DOUGLAS W. RANDALL, INC.

v.

AFA PROTECTIVE SYSTEMS, INC.

Civ. A. No. 78–1958.

United States District Court,
E. D. Pennsylvania.

June 18, 1981.

Alan J. Candell, Candell & Blumenthal, Philadelphia, Pa., for plaintiff.

Frank D. Branella, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Douglas W. Randall, Inc., instituted this negligence action against AFA Protective Services, Inc. for damages sustained during the night of August 3, 1977 when the plaintiff's jewelry store in Philadelphia, Pennsylvania was burglarized. The defendant, pursuant to a contract with the plaintiff, had installed a silent burglary alarm system in the plaintiff's store in September 1976. Jurisdiction was based on diversity of citizenship. This action was bifurcated and tried before a jury from July 21, 1980 to July 23, 1980. The jury, by answering interrogatories, found that the defendant was negligent and grossly negligent, and that the defendant's negligence and gross negligence were a proximate cause of the failure of the burglary alarm system to timely detect the burglary on August 4, 1977. The jury then heard evidence in connection with damages and assessed damages in the amount of $14,330.00. The defendant subsequently filed motions for a judgment n. o. v. and/or a new trial. After carefully considering all of the grounds alleged by the defendant, the Court has determined that it will deny the defendant's motion for a judgment n. o. v. and deny its motion for a new trial.

■ Motions for a new trial require the exercise of discretion by the Court, whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5], at 59–160 (footnote omitted) (2d ed. 1974); *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 474–75 (3d Cir. 1973). The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because the Court may have reached a different conclusion. To grant a motion for judgment n. o. v., the Court must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a motion "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's, supra*, ¶ 50.07[2], at 50–77 (footnote omitted); *Korvette, supra*, at 474.

The evidence at trial, viewed in the light most favorable to the plaintiff, showed that the plaintiff rented a store in the New Market section of Head House Square, Philadelphia, Pennsylvania, and used this store to manufacture jewelry and display the manufactured jewelry for sale. The entire front wall of the store, which included the door to the store, was made of glass. The plaintiff leased an alarm system from the defendant, a corporation engaged in the burglary alarm business. The plaintiff advised the salesman for the defendant that it wanted the finest alarm system available, and the parties entered into a written lease agreement in September 1976 whereby the defendant agreed to install and maintain in the plaintiff's store an ultrasonic sound wave burglary alarm system. This system, when activated, was designed to detect any motion inside the plaintiff's store and relay a signal to the defendant's central station. The defendant's personnel at the central station would then call the police, who were expected to arrive at the store within two or three minutes. This system was installed in the plaintiff's store in September 1976.

Between September 1976 and March 1977, the alarm system triggered many false alarms during the hours that the plaintiff's store was closed. An employee of the defendant came to the plaintiff's store in March 1977 and adjusted the alarm system in such a manner that the false alarms ceased. An employee of the defendant also inspected the alarm system in the early summer of 1977 in response to the plaintiff's complaint that the alarm system was not working properly. On August 4, 1977, at approximately 7:15 a. m., the maintenance supervisor for the shopping complex in which the plaintiff's store was located discovered that all of the glass in the door to the plaintiff's shop was broken. As a result of actions taken by the maintenance supervisor, the plaintiff and the police were notified. One of the defendant's repairmen came to the plaintiff's store on August 4 after the burglary to inspect the alarm system and told the plaintiff that the reason that the alarm system "didn't pick up anybody was that it was turned all the way down." (N.T. 1.66).

In support of its motion for a judgment n. o. v., the defendant contends that there was insufficient evidence to sustain the jury's findings of negligence and gross negligence. With respect to the jury's finding of damages, the defendant claims that the plaintiff failed to put into evidence facts sufficient for the jury to determine the amount of the loss. The defendant further contends that the amount of damages recoverable by the plaintiff should be limited to $250.00 by virtue of an exculpatory clause in the contract between the parties.

Before addressing the defendant's contentions, the Court will consider an issue which has not been raised by the parties. In *Nirdlinger v. American District Telegraph Co.*, 245 Pa. 453, 91 A. 883 (1914), the Supreme Court of Pennsylvania held that the defendant, a company which had installed a burglar alarm system in the plaintiff's house but had negligently failed to properly reset the alarm after it had been temporari-

ly turned off, was not liable in trespass for the loss sustained by the plaintiff from a burglary which occurred after the alarm had been improperly reset. The Pennsylvania Supreme Court in *Nirdlinger* held that the chain of causation between the defendant's negligence and the loss sustained by the plaintiff had been broken by the burglary. The Court stated:

> The fact next preceding the fact of plaintiff's loss, and the one fact to which the loss must be referred as its nearest antecedent is the felonious entry of plaintiff's house. How was the defendant's negligence linked, as an operating cause, to this fact or event? Certain it is that it did not produce it. The law regards those consequences as remote, and therefore not actionable, which are produced by the intervention of human agency, or the voluntary act of a person over whom the defendant has no control, and his act no influence.... We find, then, a proximate cause of the loss here in the felonious entry of the dwelling, but back of that nothing, at least nothing that involves this defendant.

*Id.* at 885.

In this diversity action, there is no question that the law of Pennsylvania is the substantive law which must be applied. This means that we are bound by the decisions of the Supreme Court of Pennsylvania. Therefore, if *Nirdlinger* is still the law, the defendant would be entitled to a judgment n. o. v. However, we are convinced that *Nirdlinger* is no longer the law of Pennsylvania.

The Supreme Court of Pennsylvania has made it clear on a number of occasions that it has adopted those sections of the Restatement (Second) of Torts dealing with proximate cause. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978); *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977); *Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970) (and cases cited therein). The issue is whether the burglary of the plaintiff's store broke the chain of proximate causation and thus relieved the defendant of liability. The Supreme Court of Penn-

sylvania in *Nirdlinger* held that it did. However, subsequent decisions of the Supreme Court of Pennsylvania based upon the Restatement make it abundantly clear that the Supreme Court of Pennsylvania today holds that a criminal act of a third person does not always break the chain of proximate causation, and would thus now hold that whether the burglary in this action broke the chain of proximate causation would be a question of fact for the jury. The Supreme Court of Pennsylvania applies section 448 of the Restatement (Second) of Torts, which is entitled "Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence." Section 448 provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

The Supreme Court of Pennsylvania has held that the jury must determine whether the defendant, at the time of his negligent conduct, realized or should have realized the likelihood that his negligent conduct created a situation which afforded an opportunity to a third person to commit a crime, and that a third person might avail himself of the opportunity to commit a crime. *Ford, supra; Anderson v. Bushong Pontiac Co., Inc.*, 404 Pa. 382, 171 A.2d 771 (1961).

As previously pointed out, the *Nirdlinger* Court held that "intervention of human agency" was a superseding cause which relieved the defendant burglar alarm company from liability for its negligence. Section 448 and *Ford, supra*, which recognize that the intentional torts or crimes of a third party are not always a superseding cause which break the chain of proximate causation and relieve the defendant of liability,

are clearly contrary to the language of *Nirdlinger*. In fact, the acts of the defendant in this action seem to come squarely within the "unless" clause of section 448. We therefore conclude that *Nirdlinger* is no longer the law of Pennsylvania and that the issue of proximate cause was properly submitted to the jury. Furthermore, there was sufficient evidence to support the jury's finding of proximate cause in this action since there was evidence from which the jury could reasonably conclude that, at the time of the defendant's negligent and grossly negligent conduct, the defendant should have realized the likelihood that turning the alarm system down to a point where it would not "pick up anybody" (N.T. 1.66) created a situation which would afford an opportunity to a burglar to rob the plaintiff's store, and that a burglar might well avail himself of such an opportunity—and did.

■ The defendant contends that there was insufficient evidence from which the jury could reasonably conclude that the defendant was negligent or grossly negligent. There was evidence in the record from which the jury could conclude that the defendant's employees had turned down the sensitivity level of the burglar alarm to a point where it would not detect the entry of a person into the plaintiff's store. Mr. Randall testified that an employee of the defendant came to the plaintiff's store in March 1977 and adjusted the alarm system to prevent false alarms. An employee of the defendant also inspected the alarm system in the summer of 1977. After the burglary, the employee of the defendant who inspected the burglar alarm system told Mr. Randall that the alarm system "didn't pick up anybody" because "it was turned all the way down." (N.T. 1.66). We must therefore determine whether the actions of the defendant in turning down the plaintiff's alarm system to such a low level permitted the jury to reasonably conclude that the defendant was negligent and grossly negligent.

In connection with negligence, the Court charged the jury that:

negligence is the doing of some act which a reasonably prudent person would not do, or it is the failure to do something which a reasonably prudent person would do when prompted by considerations which ordinarily regulate the conduct of human affairs.... [I]t is the failure to use ordinary care under the circumstances in the management of one's person or property or agencies that are under one's control. (N.T. 2.75).

Neither party took exception to this portion of the charge. On the basis of the record, the Court concludes that the jury could have reasonably found that the defendant, in turning the burglar alarm "all the way down," was negligent in that it failed to exercise ordinary care under the circumstances.

In connection with gross negligence, the Court charged the jury that:

gross negligence differs from ordinary negligence only in degree. It is materially greater than ordinary negligence, and consists of the absence of even slight care. Gross negligence is more than the lack of ordinary care. You recall that I told you what ordinary care meant. Gross negligence is an extreme departure from ordinary care. Gross negligence has been defined as performing or failing to perform a duty in reckless disregard of the consequences. (N.T. 2.79–.80).

Neither party took exception to this portion of the charge, and our charge was in accordance with the definition of gross negligence under Pennsylvania law. *Williams v. State Civil Service Commission*, 9 Pa. Cmwlth. 437, 306 A.2d 419 (1973), *aff'd*, 457 Pa. 470, 327 A.2d 70 (1974). Dean Prosser stated that gross negligence is "more than ordinary inadvertence or inattention, but less than conscious indifference to consequences." W. Prosser, Law of Torts 185 (4th ed. 1971). If the defendant, in repairing the alarm system, turned the sensitivity level of the system down to such a low level that the system would not detect the entry of a person into the store, the Court cannot conclude that the jury erred in finding that the defendant's actions departed from the

standard of ordinary care to such an extent that those actions constituted gross negligence. Although the Court may have decided this issue differently if it were the trier of fact, or another jury may not have found that the plaintiff carried its burden of proving gross negligence, the jury in this action could have reasonably concluded that the plaintiff carried its burden of proving gross negligence by a preponderance of the evidence.

The defendant further contends that there was insufficient evidence to support the jury's award of damages, but does not cite any reasons in support of this contention. Mr. Randall testified specifically as to the price of every item which was missing from his store on August 4, 1977 and described the way in which he calculated the price of each item. We have reviewed this evidence and the other evidence at trial in connection with damages, and conclude that the jury's award of damages was amply supported by such evidence. *See Gordon v. Trovato*, 234 Pa.Super. 279, 338 A.2d 653 (1975).

The last contention raised by the defendant in support of its motion for judgment n. o. v. is that the exculpatory clause in the contract between the parties limits the amount of damages recoverable by the plaintiff to $250.00. The exculpatory clause provides:

The subscriber does not desire this contract to provide for full liability of the contractor and agrees that the contractor shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert; that if the contractor should be found liable for loss or damage due to a failure of service in any respect, its liability shall be limited to a sum equal to ten percent of the annual service charge or $250., whichever is greater, and that the provisions of this paragraph shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of the contractor, its agents or employees.

Under Pennsylvania law, exculpatory clauses in contracts relieving a party from liability for negligence are valid. *Dilks v. Flohr Chevrolet, Inc.*, 411 Pa. 425, 192 A.2d 682 (1963). Such clauses, however, will be strictly construed against the party who seeks to limit its liability. *Fidelity Leasing Corp. v. Dun & Bradstreet, Inc.*, 494 F.Supp. 786 (E.D.Pa.1980); *Richard's 5 & 10, Inc. v. Brooks Harvey Realty Investors*, 264 Pa.Super. 384, 399 A.2d 1103 (1979). The exculpatory clause in this action limits the defendant's liability only with respect to acts of negligence, and not for acts of gross negligence. Since the jury found that the defendant was grossly negligent, the exculpatory clause does not limit the defendant's liability to the plaintiff. *Fidelity Leasing, supra.* The defendant is therefore liable to the plaintiff for $14,330.00, the entire amount of damages awarded by the jury. The defendant's motion for judgment n. o. v. will be denied.

Pursuant to Fed.R.Civ.P. 50(c), the Court must rule on the defendant's motion for a new trial as well as its motion for a judgment n. o. v. In support of its motion for a new trial, the defendant alleges that the Court erred in failing to give the "expert witness" charge to the jury. When the Court was charging the jury, counsel for the defendant for the first time requested the Court to give the expert witness charge to the jury, claiming that Mr. Pepito, one of its witnesses, was an expert witness. Mr. Pepito, who is the assistant operation manager of the defendant, testified that he supervised the installation of the alarm system in the plaintiff's store and made a number of service calls at the plaintiff's store in an attempt to prevent the false alarms which had been occurring there. He also testified that he recommended the installation of another sound wave machine in the plaintiff's store in order to cover certain "dead spots" which he believed may have been present in the store. Counsel for the defendant did not qualify Mr. Pepito as an

expert witness, and did not ask Mr. Pepito for an opinion. The Court refused the defendant's request that the jury be given the expert witness charge. As previously stated, in order to receive a new trial the defendant must show that there has been manifest injustice, and we conclude that failure to give the expert witness charge was not manifest injustice. The defendant is therefore not entitled to a new trial on this basis.

While we have not discussed every allegation of error raised by the defendant in support of its motion for a new trial, we have considered all of the grounds alleged and conclude that none of them, either singly or collectively, has sufficient substance to merit further discussion as a basis for granting a new trial. The Court will therefore deny the defendant's motion for a new trial.

An appropriate order will accordingly be entered.