**Harold TOOMBS**

v.

**Sylvester MANNING, James Brown, and Southeastern Pennsylvania Transportation Authority.**

Civ. A. No. 85–0075.

United States District Court, E.D. Pennsylvania.

July 23, 1986.

Blaise H. Coco, Jr., Philadelphia, Pa., for plaintiff.

Perry S. Bechtle, LaBrum and Doak, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Harold Toombs commenced this action against Southeastern Pennsylvania Transportation Authority (SEPTA) and two SEPTA employees, cashier Sylvester Manning and driver James Brown, alleging that the negligence of Mr. Manning and Mr. Brown caused an accident in which the plaintiff was struck by a SEPTA subway train. The jury found that the causal negligence of the cashier, Mr. Manning, contributed 80% to the accident, that the causal negligence of the subway train driver, Mr. Brown, contributed 20% to the accident, and that there was no causal negligence on the part of the plaintiff. The jury then returned a verdict of $1,000,000 in compensatory damages in favor of the plaintiff.

Defendants have filed motions for judgment notwithstanding the verdict, a new trial, and to amend the judgment, on the following grounds: (1) the sufficiency of the evidence; (2) that SEPTA is immune from liability under 42 Pa.Cons.Stat.Ann. § 8521 *et seq.*, or 42 Pa.Cons.Stat.Ann. § 8541 *et seq.;* (3) that damages may not be assessed against SEPTA in an amount greater than $250,000. pursuant to 42 Pa. Cons.Stat.Ann. § 8528(b) or $500,000. pursuant to 42 Pa.Cons.Stat.Ann. § 8553(b); (4) that the Court erred in its charge to the jury; (5) that the Court erred in evidentiary rulings concerning expert testimony and loss of future earning capacity. Plaintiff has filed a motion to amend the judgment to include delay damages. For the reasons discussed below, defendants' motions for judgment notwithstanding the verdict and/or a new trial will be denied, defendants' motion to amend the judgment will be granted, and plaintiff's motion to amend the judgment will be granted.

■ The authority to grant a new trial is confided to the discretion of the district court, whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5] at 59–160 (footnote omitted) (2d ed. 1974). *See Douglas W. Randall, Inc. v. AFA Protective Systems, Inc.,* 516 F.Supp. 1122, 1124 (E.D.Pa.1981), *aff'd mem.,* 688 F.2d 820 (3d Cir.1982). The district court may not substitute its own judgment for that of the jury simply because the district court might have come to a different conclusion. *Randall,* 516 F.Supp. at 124. The jury's verdict may be set aside only if manifest injustice would result if it were allowed to stand or if a new trial is required to correct a verdict which was against the clear weight of the evidence. *American Bearing Co. v. Litton Industries, Inc.,* 729 F.2d 943, 948 (3d Cir.), *cert. denied,* 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984); *Thomas v. E.J. Korvette, Inc.,* 476 F.2d 471, 474–75 (3d Cir.1973).

In order to grant a motion for judgment notwithstanding the verdict (JNOV), the district court

must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict. *Neville Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1210 (3d Cir.), *cert. denied,* 400

U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a motion "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's, supra,* ¶ 50.-07[2], at 50–77 (footnote omitted); *Korvette, supra,* at 474. *Randall,* 516 F.Supp. at 1124. "Normally, when the evidence is contradictory, a JNOV is inappropriate." *Bonjourno v. Kaiser Aluminum & Chemical Corp.,* 752 F.2d 802 (3d Cir.1984) (citing *Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 540 F.2d 1171, 1178 (3d Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977)).

## I. *Sufficiency of the Evidence*

The plaintiff produced sufficient evidence to support the jury's verdict under either the new trial standard or the JNOV standard. The evidence was uncontradicted that early on the morning of January 3, 1983, plaintiff descended the stairs to the southbound subway platform of the Broad Street and Allegheny Avenue station of the SEPTA Broad Street line, alone. The following was also undisputed: Plaintiff greeted the cashier, Mr. Manning, paid his fare, and waited on the subway platform. Two males came up to the plaintiff and demanded some money. Plaintiff refused, and an argument ensued near the edge of the subway platform. One of the men pulled a knife from his pocket. The argument was witnessed by Sylvester Manning, who was in the cashier's booth. Mr. Manning also saw the knife. Mr. Manning failed to utilize (1) a switch to turn on a light at street level to signal police; (2) a phone to the SEPTA dispatcher; or (3) a button to sound an alarm at the subway platform level; all of which were inside the cashier's booth. Instead, Mr. Manning opened the door of the booth to ask what was going on and to try to calm the situation. The argument continued. Plaintiff did not ask for help. As plaintiff turned his head to look at the oncoming subway train, one of the men gave him a forceful blow to the face or head. Plaintiff ran off

with his face in his hands. Shortly thereafter, plaintiff fell or jumped onto the subway tracks and sustained serious injuries when he was struck by the oncoming train. Mr. Manning then called the city police, who arrived within 3–5 minutes.

The witnesses disputed the lapse of time from plaintiff's arrival on the platform to the beginning of the argument, to the moment the punch was thrown, to the moment the train arrived. There was some uncertainty as to how the plaintiff wound up on the subway tracks.

The Court instructed the jury that SEPTA, as a common carrier, owes a duty to its passengers to conform to a high degree of care in the services SEPTA undertakes to provide for the benefit of its passengers. The Court further instructed the jury that where a third person acts in a violent, criminal, or negligent manner, the carrier has a duty to protect the passengers to the extent possible. *See Mangini v. Southeastern Pennsylvania Transp. Authority,* 235 Pa.Super. 478, 481–82, 344 A.2d 621, 623 (1975).

The plaintiff argued that Mr. Manning, who was instructed by SEPTA in safety and whose booth was equipped with several safety devices, should have called the train dispatcher, signalled the police, or sounded the alarm when he witnessed the foregoing events on the subway platform. The defendants argued that Mr. Manning's handling of the situation was reasonable, that there was not enough time for the SEPTA or city police to answer a call or signal even if these had been utilized, and that the alarm would not have been effective in preventing the accident. The evidence presented a question for the jury as to whether the course of action followed by Mr. Manning was reasonable and whether it was a substantial contributing factor in bringing about the accident. There was ample evidence to support the jury's verdict that Mr. Manning's negligence was a proximate cause of the accident.

There was evidence that the plaintiff and his attackers were arguing on the platform

for over fifteen minutes. When one of the men pulled a knife from his pocket, the three were standing near the edge of the platform. At that point, Mr. Toombs was on the very edge with his back to the tracks. There was evidence that Mr. Toombs saw one of the men flash the knife three to four minutes before he was punched, and that he was punched while turning his head to look at the oncoming train. There was also evidence that when Mr. Toombs turned his head and was punched, the train was 50 feet away.

█ Mr. Brown testified that as a subway train driver, he was trained to be alert to the possibility of confrontations on the platform and to sound his whistle if he saw people standing too close to the edge. Mr. Brown stated that he never saw anything that concerned him, and therefore he never used his whistle. Mr. Brown stated that he did not notice plaintiff until the train was 8–15 feet away from plaintiff, and plaintiff was about to fall or jump onto the tracks. Mr. Brown said he had already applied the brake by this time. Although he testified that he put the brake into the emergency position when he saw plaintiff, the train came to a stop about where it would have stopped anyway.

Defendants argued to the jury that there was nothing Mr. Brown could have done to avoid the accident. Plaintiff argued that Mr. Brown should have noticed the emergency at an earlier time, when there was an opportunity to bring the train to a shorter stop or to use the whistle. There was a question for the jury as to whether Mr. Brown should have detected trouble on the platform before it was too late. The evidence was sufficient for the jury to find that Mr. Brown should have been prompted to apply the brake at an earlier point or to sound the whistle, and that Mr. Brown's failure to do either was a proximate cause of the accident.

## II. *SEPTA's status as a Commonwealth party or a local agency*

The next issue raised by defendants' motions is whether SEPTA is either a "Commonwealth party" or a "local agency" as defined in 42 Pa.Cons.Stat.Ann. § 8501 for purposes of the immunity defined in 42 Pa.Cons.Stat.Ann. § 8521 *et seq.* or 42 Pa. Cons.Stat.Ann. § 8541 *et seq.*

A "Commonwealth party" is defined as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." *Id.* at § 8501. Defendants point out that the Superior Court of Pennsylvania described SEPTA as a Commonwealth agency in *Feingold v. Southeastern Pennsylvania Transp. Authority*, 339 Pa.Super. 15, 30, 488 A.2d 284, 292 (1985) (citing Pennsylvania Urban Mass Transportation Law of July 10, 1980, P.L. 427, No. 101, § 3, 55 P.S. § 600.191 *et seq.*). In *Feingold*, the Superior Court ruled that the Pennsylvania common law rule that punitive damages are not recoverable against a municipality or a Commonwealth agency was applicable to SEPTA. 339 Pa.Super. at 30, 488 A.2d at 292. The court noted that 42 Pa.Cons.Stat.Ann. § 8528, which limits the types of recovery available against a Commonwealth agency, did not govern *Feingold* because of the effective date of the statute. 339 Pa.Super. at 31 n. 4, 498 A.2d at 293 n. 4.

The statute cited by the Superior Court in *Feingold* defines the powers and duties of transportation authorities in the metropolitan area of Pennsylvania, and provides that

[a]n authority shall in no way be deemed to be an instrumentality of any city or county or other municipality or engaged in the performance of a municipal function, but *shall exercise the public powers of the Commonwealth as an agency or instrumentality thereof....*

55 P.S. § 600.303(a) (emphasis added).

Defendants also rely on cases holding transportation authorities exempt from certain types of taxation by virtue of their status as agencies of the Commonwealth. *See Commonwealth v. Erie Metropolitan Transit Authority*, 444 Pa. 345, 281 A.2d 882 (1971); *Southeastern Pennsylvania Transp. Authority v. Board for the As-*

*sessment and Revision of Taxes*, 13 Pa. Cmwlth. 207, 319 A.2d 10 (1974); *Philadelphia v. Southeastern Pennsylvania Transp. Authority*, 8 Pa.Cmwlth. 280, 303 A.2d 247 (1973).

The plaintiff emphasizes that the above-quoted language does not state that a transportation authority *is* an agency or instrumentality of the Commonwealth, but only that a transportation authority "shall exercise the public powers of the Commonwealth as an agency or instrumentality thereof." The Court does not place the same significance upon this choice of words as plaintiff does.

Plaintiff also relies on *Scott v. Shapiro*, 19 Pa.Cmwlth. 479, 339 A.2d 597, 598–99 (1975), which held that SEPTA is not a state agency within the meaning of section 9 of the "Sunshine Law", which gave the Commonwealth Court original jurisdiction over actions arising under the law which involved Commonwealth agencies. The court acknowledged the grant of Commonwealth powers in the Metropolitan Transportation Authorities Act, 66 P.S. § 2001, which originally created SEPTA and which contained the same "agency" language as 55 P.S. § 600.303(a). However, the court also stated,

> The concept of *jurisdiction* is designed to insure the availability of the most practical and competent forum for the airing of a particular grievance. The legislature's *grant of the powers of a State agency to SEPTA has no relation to this concept.* Such a broad grant is necessitated only by the practical imperative of providing autonomy from local governmental interference with the operations of the agency. *Local judicial scrutiny of the agency exists in another dimension. Its practicality and desirability must be determined, not on the basis of the powers exercisable by the agency involved, but rather on the basis of whether the activities of said agency are of local, as opposed to statewide interest.* While SEPTA is not "local" in the traditional sense, in that it encompasses and affects a multi-county area,

its activities are certainly not of statewide concern. They are restricted to one particular geographical area within the Commonwealth, and judicial review of said actions may best be provided in the courts of that area.

*Id.* In so reasoning, the *Shapiro* Court relied on *Southeastern Transp. Authority v. Kohn*, 18 Pa.Cmwlth. 546, 336 A.2d 904 (1975), in which the Commonwealth Court held that SEPTA was not a state agency for purposes of establishing exclusive original jurisdiction in the Commonwealth Court pursuant to 17 P.S. § 211.402(4):

> Just as the Commonwealth Court is a court of statewide jurisdiction, the legislature, in defining its jurisdictional role with respect to state and local agencies, intended the Commonwealth Court in its original jurisdiction to concern itself with statewide agencies or statewide instrumentalities of state government, and in its appellate jurisdiction to concern itself with agencies and instrumentalities of local government or governments.

18 Pa.Cmwlth. at 550, 336 A.2d at 906 (citation omitted). The *Kohn* Court treated SEPTA as a local agency for the purpose of defining Commonwealth Court original jurisdiction. *Id.* (citing *Levine v. Redevelopment Authority of the City of New Castle*, 17 Pa.Cmwlth. 382, 333 A.2d 190 (1975) (redevelopment authority is local agency for jurisdictional purposes); *Clearfield Area Housing Corporation v. Hughes*, 13 Pa.Cmwlth. 96, 318 A.2d 754 (1974) (housing authority is local agency for jurisdictional purposes)).

Plaintiff also cites *Fisher v. Southeastern Pennsylvania Transp. Authority*, 60 Pa.Cmwlth. 269, 431 A.2d 394 (1981), which held that SEPTA employees are not employees of the Commonwealth or of a political subdivision thereof for purposes of a 1935 statute mandating compensation to these employees for time spent on active duty with any of the reserve components of the United States Armed Services. *See* 65 P.S. § 114. Without denying that SEPTA is an instrumentality of the Commonwealth, the *Fisher* court explained,

The Legislature many years ago recognized the need for efficient and inexpensive mass transportation systems designed to alleviate serious traffic difficulties in the overcrowded metropolitan areas of the Commonwealth. Thus, *SEPTA* and *other transportation authorities were created pursuant to legislative guidelines designed to provide independent operating powers with minimum local government interference.* The grant of broad powers by the Legislature was meant to insure efficient operation of the integrated transportation networks, not to expand the already large and complex state bureaucratic system. *We do not believe that the Legislature intended SEPTA to be a Commonwealth agency in the traditional sense or for SEPTA employees to be considered Commonwealth employees for purposes of other legislative enactments.*

60 Pa.Cmwlth. at 274, 431 A.2d at 397 (emphasis added). *Compare Charles Brusstar v. Southeastern Transp. Authority,* 636 F.Supp. 1557 (E.D.Pa.1986) (assuming that SEPTA is an instrumentality or political subdivision of the Commonwealth of Pennsylvania, but finding that the operation of a mass transit system is not a traditional state or local governmental function). *Cf. Crilly v. Southeastern Pennsylvania Transp. Authority,* 529 F.2d 1355 (3d Cir.1976) (SEPTA is a political subdivision of Pennsylvania under federal law definition for purposes of the Taft-Hartley Act).

The tax, jurisdiction, and employment regulation cases demonstrate that the classification of SEPTA as a state agency depends upon the purpose to be served. The inclusion of the agency language in § 600.-303(a) does not automatically make SEPTA a state agency for all purposes. *See Com. v. Erie,* 444 Pa. at 351, 281 A.2d at 885. Similarly, cases holding that SEPTA is not a state agency for purposes of choice of forum and regulation of employee wages do not answer the question before this Court. The Court notes, however, that the taxation cases may be more instructive

than the latter group because legislative concern for the financial well-being and independence of transportation authorities is relevant in defining those entities which are or are not "Commonwealth parties" and immune from damages liability.

■ In the absence of clear guidance from the Pennsylvania courts, this Court has determined that *Feingold* offers the best basis for predicting what the Pennsylvania Supreme Court would hold in this case. In *Feingold,* the Superior Court considered SEPTA a state agency for the specific purpose of limiting damages liability and found that the traditional purposes for limiting the damages liability of a municipality were also served by limiting the damages liability of SEPTA. 330 Pa.Super. at 31–32, 488 A.2d at 292. In addition, the *Feingold* court suggested that the provisions of 42 Pa.Cons.Stat.Ann. § 8528 would be applicable to cases involving SEPTA which arose after the effective date of the statute. *Feingold,* 339 Pa.Super. at 31 n. 4, 488 A.2d at 293 n. 4.

*Feingold* and the 1980 statute creating urban mass transportation authorities, 55 P.S. § 600.101 *et seq.,* persuade this Court that designating SEPTA a "Commonwealth party" is preferable to designating SEPTA a "local agency." *See* 42 Pa.Cons.Stat. Ann. § 8501 ("Local agency. A government unit other than the Commonwealth government. The term includes an intermediate unit.")

An employee of a Commonwealth agency, in a case involving acts within the scope of his office or employment, is a "Commonwealth party." 42 Pa.Cons.Stat.Ann. § 8501. There is no question that Mr. Manning and Mr. Brown were acting within the scope of their employment when this lawsuit arose. Therefore, they are "Commonwealth parties" in this action. The Court does not construe *Fisher v. SEPTA, supra* to require a different result.

III. *Exceptions to Immunity and Limitations on Damages in connection with "Commonwealth Parties"*

Section 8522 of Title 42 provides that immunity as a bar to actions against Com-

monwealth parties is waived only with respect to certain listed activities and only "where damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." This case is concerned with only two of the excepted activities:

(1) *Vehicle Liability.*—The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" ... includ[es] vehicles operated by rail....

.    .    .    .    .

(4) *Commonwealth real estate, highways, and sidewalks.* A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency....

42 Pa.Cons.Stat.Ann. § 8522(b)(1) & (4).

■ At the close of plaintiff's case, defense counsel moved for a directed verdict, arguing, *inter alia,* that plaintiff's case did not fall into either of these exceptions to immunity. The Court expressed the opinion that subdivision (b)(1) encompassed the activity of operating rail vehicles as a common carrier, and that the traditional duty of care owed by a common carrier to its passengers extended to ingress to and egress from the actual bus, train, trolley or other vehicle. *Acton v. Pennsylvania-Reading Seashore Lines,* 138 Pa.Super. 605, 11 A.2d 203 (1940); *Calhoon v. Pittsburgh Coal Co.,* 128 Pa.Super. 582, 194 A. 768 (1937). *See also Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority,* 507 Pa. 204, 489 A.2d 1291 (1985); *Ensor v. Pennsylvania R. Co.,* 306 Pa. 451, 159 A. 872 (1932); *Tyler v. Insurance Co. of North America,* 311 Pa.Super. 25, 457 A.2d 95 (1983). Defense counsel argued that the traditional duty of a common

carrier was vitiated by the enactment of 42 Pa.Cons.Stat.Ann. § 8501 *et seq.* and that now SEPTA only faced potential liability under subdivision (b)(1) in cases involving the actual *operation* of the vehicle. This Court disagreed at that time, as it does now. Section 8522 calls for a determination of whether, absent an immunity defense, an action could have been maintained against SEPTA at common law. *See, e.g., Johnson v. Southeastern Pennsylvania Transp. Authority,* 91 Pa. Cmwlth. 587, 498 A.2d 22 (1985); *Carswell v. Southeastern Pennsylvania Transp. Authority,* 259 Pa.Super. 167, 393 A.2d 770 (1978). There is nothing in section 8522 which purports to change the basic common law liability of common carriers. Therefore, the Court again holds that the exception to immunity provided in section 8522(b)(1) operates to waive SEPTA's immunity with respect to not only the alleged negligence of the train driver, Mr. Brown, but also with respect to the alleged negligence of Mr. Manning, the cashier, in connection with what happened before his eyes on the subway platform.

The parties devote a great deal of discussion to whether the "Commonwealth real estate" exception is applicable in this case. On the basis of plaintiff's evidence, the Court determined that plaintiff had not proceeded on an "inadequate security" theory against SEPTA. *Compare Kenny v. Southeastern Pennsylvania Transp. Authority,* 581 F.2d 351 (3d Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979); *Carswell v. Southeastern Pennsylvania Transp. Authority, supra.* Instead, plaintiff's cause of action against SEPTA was dependent on the alleged negligence of Messrs. Manning and Brown. Therefore, it is not necessary to determine whether plaintiff's failure to introduce evidence of foreseeability, *i.e.,* that SEPTA was on notice of a high incidence of crime at the particular station involved, precludes plaintiff's action under section 8522(b)(4).

■ Because plaintiff's cause of action falls within 8522(b)(1), defendants' motion

**946**

for JNOV on sovereign immunity grounds will be denied. However, defendants have also moved to amend the judgment on the authority of 42 Pa.Cons.Stat.Ann. § 8528(b), which provides, "Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff, or $1,000,000 in the aggregate." Defendants' motion to amend the judgment will be granted, and the judgment in favor of the plaintiff will be reduced to $250,000.

## IV. *Charge to the Jury*

■ Defendants argue that the Court erred in charging the jury that the evidence of plaintiff's prior criminal conduct could be used only for the purpose of impeaching the credibility of the plaintiff. Defendants apparently claim that the jury should have been allowed to consider this as evidence that plaintiff might not have as high a future earning capacity because of a propensity to commit crimes. Plaintiff himself introduced this evidence.

The case cited by defendants in support of this argument, *Musgrave v. Novak*, 379 Pa. 184, 108 A.2d 808 (1954), held that evidence of past periodic intoxication was relevant for the purpose of refuting plaintiff's testimony that he had worked regularly prior to the accident. This use was, therefore, the same as the Court allowed in this case, *i.e.*, to refute plaintiff's testimony. The evidence does not adequately support the additional proposition urged by the defendants. The use urged by defendants was also unduly prejudicial. Therefore, there was no error in limiting the jury's use of the evidence of plaintiff's prior criminal conduct.

## V. *Expert Testimony*

### A. *Subway Trains*

■ Defendants contend that expert testimony should have been required in order to allow the jury to find that Mr. Brown, the operator of the subway train, was negligent. Defendants argue that the operation of a subway train is a complex matter outside the knowledge of the jury.

Mr. Brown explained the basic mechanics of his job during his examination. He explained that he had a lever to make the train go forward, but no speedometer. As the train approached a station, he would first see the letter "O" on the wall, which meant "throw off power." The next letter, "B", meant "apply brake." The brake had three positions, the third of which was the emergency brake.

The Court finds that the jury was fully competent to understand the basics of what Mr. Brown's job required, and that no expert was needed to explain the operation of the subway train.

### B. *Future Earning Power*

Following the accident, the plaintiff was comatose for 2 weeks. He suffered extensive injuries including a broken jaw and a broken ankle. Plaintiff has chronic osteomyelitis of the left tibia, which may be reactivated in the future by activity. In the event of reactivation, plaintiff will require 3–5 months hospitalization. The evidence showed that prior to the accident, plaintiff had no physical impairment and was able to do manual labor. The medical evidence also showed that after the accident, plaintiff could not stand or walk for long periods. Based on this, a disability evaluation was performed for plaintiff which showed that plaintiff can no longer work on his feet, can perform only light, unskilled work, and has suffered a wage capacity loss of approximately $4.50 per hour.

■ Defendants contend that the Court erred in allowing plaintiff to offer the expert testimony of a rehabilitation consultant in support of his claim for loss of future earning capacity. "An injured plaintiff is compensated for the loss in future earning capacity—the lowering of his economic horizons—whether the loss in capacity actually reduces his earnings or not, and it is for the jury to decide the extent and duration of the loss." *Fish v. Gosnell*, 316 Pa.Super. 565, 582, 463 A.2d 1042, 1057

(1983) (citations omitted). "The test for impaired earning capacity is whether the economic horizon of the disabled person has been shortened because of the injuries sustained as a result of the tortfeasor's negligence." *Lewis v. Pruitt,* 337 Pa.Super. 419, 430, 487 A.2d 16, 21 (1985) (citations omitted). The testimony concerning plaintiff's severe permanent injuries which prevent him from engaging in any skilled manual labor was properly placed before the jury to assist it in determining to what extent the plaintiff's economic horizons have been shortened as a result of the accident.

Defendants also contend that Dr. Della Grossman, a psychologist, should not have been permitted to offer her opinion on the significance of the fact that plaintiff received an IQ score of 84 in 1972 and in 1985 plaintiff received an IQ score of 74. The Court determined that testimony regarding IQ tests was within Dr. Grossman's expertise and that this testimony was relevant to plaintiff's ability to perform various jobs in the future. There was no error in connection with these rulings.

Defendants do not discuss their bare assertion that the verdict in this case was excessive. Keeping in mind the prolonged hospitalization, lengthy recovery period, and permanent injuries suffered by plaintiff, the Court does not find the $1,000,000 verdict shocking to the conscience, nor does it appear to have resulted from caprice, prejudice, partiality, corruption, or some other improper influence. *Lewis v. Pruitt,* 337 Pa.Super. at 431, 487 A.2d at 22 (citations omitted); *DeMarines v. KLM Royal Dutch Airlines,* 433 F.Supp. 1047, 1055 (E.D.Pa.1977). Therefore, the Court does not find the verdict excessive.

While all of the other contentions of alleged error raised by the defendants have not been discussed, each and every allegation of error has been considered. This Court holds that none of them, individually or collectively, is of sufficient substance to merit any further discussion as a basis for granting a new trial in this case.

## VI. *Delay Damages*

Finally, plaintiff requests the Court to add delay damages to the judgment pursuant to Pa.R.Civ.P. 238. Defendants admit that they made no written offer of settlement to plaintiff at any time prior to trial. The complaint was filed on January 7, 1985, which is more than one year after the accrual of plaintiff's cause of action.

In *Lyles v. City of Philadelphia,* 88 Pa. Cmwlth. 509, 517–18, 490 A.2d 936, 942, *app. gr.,* 509 Pa. 542, 505 A.2d 599 (1985), the Commonwealth Court held delay damages are not limited by section 8528(b)'s $250,000. cap on damages in favor of one plaintiff and against Commonwealth parties on account of one occurrence.

Therefore, plaintiff will be awarded delay damages at 10% annually from the date of the filing of the complaint, January 7, 1985, to the date of the judgment, May 23, 1986, one year and 136 days. The total delay damages are $34,314.64. [ (1 × 25,-000) + (136 × $\underline{25,000}$)].
$$\underline{\hspace{2cm}} \over 365$$

An Order will be entered denying defendants' motions for JNOV and a new trial, granting defendants' motion to amend the judgment, and granting plaintiff's motion to amend the judgment.

## ORDER

AND NOW, this 23 day of July, 1985, upon consideration of defendants' motions for judgment notwithstanding the verdict, for a new trial, and to amend the judgment, and plaintiff's motion to amend the judgment; for the reasons stated in this Court's Memorandum of July 23, 1986,

IT IS HEREBY ORDERED:

1. Defendants' motions for judgment notwithstanding the verdict and a new trial are DENIED.

2. Defendants' motion to amend the judgment and plaintiff's motion to amend the judgment are GRANTED.

3. The judgment entered May 23, 1986 providing "Judgment be and the same is hereby entered in favor of the Plain-

tiff, HAROLD T. TOOMBS, and against the Defendants, SYLVESTER MANNING, JAMES BROWN and SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, in the sum of ONE MILLION DOLLARS ($1,000,000.00)." is amended to provide as follows:

Judgment be and the same is hereby entered as of May 23, 1986 in favor of the plaintiff, Harold T. Toombs, and against the defendants, Sylvester Manning, James Brown, and Southeastern Pennsylvania Transportation Authority (SEPTA), in the sum of two-hundred and fifty thousand dollars ($250,000.00) plus delay damages of thirty-four thousand three hundred and fourteen dollars and sixty-four cents ($34,314.64) for a total judgment of two hundred and eighty-four thousand three hundred and fourteen dollars and sixty-four cents ($284,314.64).

IT IS FURTHER ORDERED that the portion of the said judgment collectable from SEPTA is 100%, the portion of the said judgment collectable from Sylvester Manning is 80%, and the portion of the said judgment collectable from James Brown is 20%.