## Ellis v. Livelsberger

*R. Elliot Katherman,* for plaintiffs.
*James F. Carl,* for defendant.

SPICER, *P.J.,* June 12, 1985—Defendant has moved for summary judgment, arguing that a release executed by plaintiffs bars suit for injuries suffered at a race car track.

The complaint was filed in York County. The court of that county by order dated July 16, 1984, transferred the case to this county.

Plaintiffs originally proceeded on a theory of negligence. The case was listed for trial and a pretrial conference was scheduled. It became apparent at that conference that legal issues should be resolved before the case was listed for trial. This decision was

engendered by the case of Talbert v. Lincoln Speedway et al., 26 Adams L. J. 117 (1984) which involved an identical release. This court, in Talbert, held the release to be enforceable, binding, and valid. Plaintiffs requested leave to file an amended complaint.

The amended complaint added a count based upon gross negligence.

Plaintiffs conceded, at oral argument, that the cause of action based upon negligence is subject to summary judgment. They argued, correctly, that the release cannot bar action on an injury caused by gross negligence. Restatement (Second) Contracts, §195(1); Dohm v. Ponderosa Riding Stables, Inc., 80 York L. J. 110 (1966). They suggested that judgment be entered as to the count in negligence, but be denied as to the count in gross negligence. Plaintiffs represented they have an expert ready to testify at trial to carry their burden of proving gross negligence.

We have no idea, at this point, who the expert is, what he would say, and whether his testimony would be admissible. The record before us consists of the pleadings, the depositions of plaintiffs and that of defendant Livelsberger.

During our discussion, we will refer to those depositions as Livelsberger, Ellis, and Mrs. Ellis.

Defendants conduct a racing car business. Plaintiffs own two tow trucks. Defendants give free admission to tow truck drivers, who then tow cars off the track when the need arises. (Livelsberger 23, 26; Ellis 8). Both plaintiffs have attended practically every race at defendant's track for 13 years (Mrs. Ellis 3). At first Mrs. Ellis sat in the grandstand but joined her husband in the infield after her children were grown. (Id. 4).

Tow truck drivers who attend are "pretty regular" (Livelsberger 13). Ellis has always parked at the same spot, an open area in the guardrails which allows access from the infield to the track and vice versa. Although there is a chain length fence in the area, placed since the accident, there is still an open area for access. (Livelsberger 27, Ellis 16).

Persons entering the pit or infield area are required to sign a release. A number, corresponding to their pit pass, is placed on this release.*

Defendant has never consulted with experts concerning safety design of the track, but he has relied upon the recommendations of the insurance carrier. Some suggestions, made by the carrier, have been carried out. (Livelsberger 11).

Everyone was aware that accidents occur during the races but the accident causing Mrs. Ellis' injuries was characterized as a "freak." (Livelsberger 17, Ellis 15). This accident occurred when a racing car developed problems and left the track. Entering the infield, it struck one of Ellis' two tow trucks. Mrs. Ellis was sitting on the back or side of the truck and was facing the pit area. She was thrown off and against the second tow truck. She suffered substantial injuries. The tow truck, on the other hand, sustained only minor damage to the bumper. The racing car was not going very fast. (Ellis 12, Livelsberger 18, Mrs. Ellis 12, 14, and 15).

Mr. Ellis said the following about the accident:

"It's just one of those thing (sic) that happened. It's just something, hey, you don't know when anything is going to happen at a race track. (Ellis 15)".

Plaintiffs' allegations of gross negligence read as follows:

---

* We did not know the significance of the number in Talbert.

"The gross negligence of defendants consisted of the following:

(a) failure to provide adequate protection for the safety of spectators and participants in the inside pit area when defendant knew of dangers to persons in plaintiff's position;

(b) failure to require spectators and participants to stay clear of the open area on the inside railway when defendant knew of dangers;

(c) failure to move spectators and participants from the open area on the inside railing during the race;

(d) failure to adequately warn spectators and participants that cars have accidently entered the inside pit area during a race." Amended Complaint at 4, no. 12.

There have been suggestions that gross negligence is an extreme departure from ordinary care involving the reckless disregard of consequences, but less than conscious indifference to the consequences of one's conduct. Douglas W. Randall, Inc. v. AFA Protective Systems, Inc., 516 F. Supp. 1122 (E.D., Pa. 1981). However, other authorities suggest that "[a]lthough some decisions attempt to draw a distinction between wilful misconduct and wanton misconduct, and between wanton misconduct and recklessness, such a distinction is probably not justified." Feldman, Pennsylvania Trial Guide, Revision, §30.15. See also Laub, Pennsylvania Trial Guide §547.3.

It would seem that recklessness is the gravamen of gross negligence. Id.

Pennsylvania has adopted the Restatement definition of recklessness. Id., citing Slother v. Jaffe, 356 Pa. 238. That definition appears in section 500 of Restatement (Second) Torts as follows:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

The real issue in this case is whether plaintiff has merely characterized negligence as gross negligence. The allegations are essentially the same as those characterized as negligence in Grbac v. Reading Fair Co., Inc., 521 F. Supp. 1351 (W.D. Pa. 1981). Since gross negligence justifies punitive damages, Feldman supra, cases involving such damages are helpful in our analysis.

In this regard, we think the decision in Smith v. Brown, 283 Pa. Super. 116, 423 A.2d 743 (1980) is instructive. A plaintiff sought punitive damages because of conduct described as "wanton and reckless." The court said the following:

"An essential fact needed to support a claim for punitive damages is that the defendant's conduct must have been outrageous. Outrageous conduct is an 'act done with a bad motive or with a reckless indifference to the interests of others.' Focht v. Rabada, 217 Pa. Super. 35, 38, 268 A.2d 157 (1970) citing comment (b) to section 908 of the Restatement of Torts.

'Reckless indifference to the interests of others', or as it is sometimes referred to, 'wanton misconduct', means that 'the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.' "

Evans v. Philadelphia Transportation Company, 418 Pa. 567, 574, 212 A.2d 440, 443 (1965). 423 A.2d at 745.

The court held that characterizing conduct as wanton and reckless did not make it so. Allegations of fact upon which the characterization was based were determinative.

The Pennsylvania Supreme Court has said that one should consider the defendant's conduct and not the results of an incident in determining outrageousness. Feld v. Merriam, 506 Pa. 383, 485 A.2d 742 (1984).

The results of this accident were unfortunate and serious. However, the conduct upon which plaintiffs base their claim is a general failure to warn and protect. There certainly may be circumstances in which such failure would amount to recklessness but there is nothing in this record to justify such a finding.

Plaintiffs were both competent adults who were veterans on the racetrack scene. There is no indication that defendant noticed Mrs. Ellis's inattention or saw that she was in a position of danger.

Defendant's duties, as possessors of land, was to protect Mrs. Ellis against the risk of harm from racing activities if it could reasonably have been expected that she would fail to protect herself notwithstanding her own knowledge of those activities. Feldman, supra, §30.94. Even though assumption of risk is a defense in these cases, liability could have been asserted despite such a defense. See Meyer v. Ski Liberty, Inc. et al., 26 Adams, L. J. 159 (1985). However, such liability would be predicated on negligence, not gross negligence.

We have not been told what plaintiffs' expert might say if this case proceeds to trial. The argument has been made that this makes the case inap-

propriate for summary judgment. However, we have a fair indication of the limits to his testimony as defined by allegations in the complaint. Such testimony could hardly justify gross negligence.

Although analogies are often more confusing than helpful, we think one might be appropriate. Many experts could testify that speed is the primary cause of vehicular accidents and that this fact is well known. It could, therefore, be argued that speeding is equivalent to reckless driving. While this argument might be true in particular situations, it is hardly true as a generality.

The attached order is entered.

## ORDER OF COURT

And now, this June 12, 1985, summary judgment is entered in favor of the defendant and against plaintiffs.